## BYAS v. UNITED STATES.
### No. 10322.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 14, 1949.

Decided April 3, 1950.

Mr. T. Emmett McKenzie, Washington, D. C., with whom Mr. James K. Hughes, Washington, D. C.. was on the brief. for appellant.

Mr. L. Clark Ewing, Assistant United States Attorney, Washington, D. C., with whom Messrs. George Morris Fay, United States Attorney, and Joseph M. Howard, Assistant United States Attorney, Washington, D. C., were on the brief, for appellee.

Before CLARK, WILBUR K. MILLER and WASHINGTON, Circuit Judges.

CLARK, Circuit Judge.

Section 2707 [1] of Title 22 of the District of Columbia Code provides: "Any person who * * * shall receive any money * * * on account of arranging for * * * any female * * * to engage in prostitution * * * shall be guilty of a felony * * *."

The appellant, Lawrence Byas, was arrested, indicted, and found guilty of committing a crime within the meaning of the aforesaid section. Although he failed to present any defense below, he now seriously urges on us that his conviction should be set aside.

The principal objections of the appellant involve the charge of the court to the jury. At the close of the case, the court instructed the jury, *inter alia,* "that the mere fact that Shirley Foster did have certain conversation with the police officer in this case, is not in and of itself sufficient to constitute a basis for acquittal, for the reason that it may be that this defendant did make arrangements for this as a supplement to the arrangement with Shirley Foster."

Appellant objected to this portion of the charge on the ground that if the jury had any reasonable doubt as to who made the arrangements, there was justification for acquittal. The court stated that it thought that this was important, and after a further brief discussion at the bench recessed for lunch admonishing the jurors in the usual manner to speak to no one about the case.

When the court reconvened it addressed the jury as follows: "Ladies and Gentlemen of the Jury: What I am going to do now is this: I am going to give the entire instruction over. In other words, what you will be bound by in your determination of

1. June 25, 1910, 36 Stat. 833, c. 404, § 3, amended Jan. 3, 1941, 54 Stat. 1226, c. 936, § 3.

this case, will be the law as the court gives it to you now. This will be the complete charge."

■ The new charge was shorter than the first one, much being eliminated therefrom. The part to which the appellant had objected was restated in the following words:

"Thus you will see from the reading of the statute and the specific charge embraced in the indictment that the essential elements of the offense with which this defendant is charged, and which the Government must prove beyond a reasonable doubt before you may find the defendant guilty, are:

"1. That the defendant received money;

"2. That such money was received for or on account of arranging for a female to engage in prostitution with a male person, and, of course, that this must have transpired in the District of Columbia.

"Now, with reference to the element of arranging for prostitution, it is not essential that the Government prove that the arrangements were made exclusively by the defendant, but merely that he participated in arranging for Shirley Foster to engage in prostitution with the officer." ·

The appellant now contends that the new charge failed to meet and correct the objectionable part of the first one; that it is bad for the further reason that it misconstrued the statute and failed to define the word "arrange"; and finally that even if it was a correct statement of the law it could have no effect because there was a prejudicial time lapse between the first and second charge, there was no withdrawal of the first charge, and no attempt was made to explain to the jury why the new one was given, or to advise them to ignore any specific part of the first charge.

As to the first contention that the new charge did not in any sense meet appellant's objection that the court should have charged that there is justification for acquittal if there is any reasonable doubt as to who

made the arrangement, appellant simply states that "arrangement" is the crux of the case, and the court should have instructed the jury that if they had reasonable doubt that the defendant made the arrangement, they should acquit. Appellant attempts to draw solace for his position from certain language in McAffee v. United States [2] where we criticized one of the trial court's instructions in regard to murder in the first degree on the ground that it had omitted from the requested instruction that portion which informed the jury that each essential element of the crime must be established beyond a reasonable doubt. But no such omission is found in the new charge complained of here. We find it difficult to see how the judge below could have more squarely met appellant's objection. He told the jury that the essential elements of the crime would have to be proved by the Government beyond a reasonable doubt before a verdict of guilty could be returned. Immediately thereafter in a very short and concise statement he set out the elements. Thus the portion of the charge relating to the burden of proof was directly tied into and made a part of the immediately succeeding part relating to those elements. It was not so far removed in point of time from the part of the charge relating to the element of arrangement as to cause the jury to lose sight of it.[3] We can find no error here.[4]

■ The next objection of the appellant to the court's charge raises the questions of whether or not the word "arrange" needs judicial definition, and of whether or not the charge as given to the jury left it free, and practically directed it, to infer from the evidence that if the defendant received money for or on account of an act of prostitution, already and independently arranged, he was guilty as charged in the indictment. These two questions can be decided in *uno flatu*, if the answer to the first one is in the negative. For, obviously, if the word "arrange" needs no judicial definition, and we

2. 1939, 70 App.D.C. 142, 151–152, 105 F. 2d 21, 30–31.

3. Peters v. United States, 8 Cir., 1947, 160 F.2d 319, 321, certiorari denied 1947, 331 U.S. 825, 67 S.Ct. 1316, 91 L.Ed. 1840

4. See Kinard v. United States, 1938, 69 App.D.C. 322, 323, 101 F.2d 246, 247: "It is axiomatic that the charge to the jury must be considered as a whole."

so hold, then the appellant's interpretation of the effect of the court's charge, which is based on his interpretation of the meaning of the word in question, must lack merit. "Arrange" is a common word in the lay vocabulary. It is a word of universal usage among the English speaking peoples. It admits of no double *entendre* which casts an umbrage of legal nicety, beyond its ordinary meanings, and under the wording of this statute there is little basis for construction.[5] As defined in Webster's New International Dictionary (Unabridged, 2d Ed.) it means " * * * To adjust or settle; esp., to settle by prior agreement or plan * * * To come to an agreement, understanding or settlement; esp., to arrange or settle details in advance; as to *arrange* about transportation or for an appointment."

Arrangements are conditions precedent to final agreements. There can be no final settlement until there is an understanding as to all the terms which go into it. An arrangement is a process by which the various parties involved reach such understandings. More than one person may participate in an arrangement either in the initial phases of the transaction or at some time prior to the final settlement.

█ The evidence in the instant case clearly supports the finding that the appellant at least participated in arranging for Shirley Foster to commit an act of prostitution with Officer Barrick. When he entered the place, she came up to him and asked if he wanted a girl. On receiving an affirmative answer, she informed Byas of that fact, and he motioned them into another room. Thereafter, it was Byas who set the price not the girl, and he asked for a certain amount for the use of the room and a certain amount for the benefit of the girl. After appellant had received the money he left the room. At that time Shirley Foster testified that she and Bar-

rick had not reached an agreement about going to bed together.

It is appellant's contention that since he had no part in the events which led to the offer and acceptance of prostituted activity, looking only to the activities of Barrick and Shirley Foster, that he cannot be held to have arranged such a result under the facts in the instant case. Therefore, the court's charge permitted the jury to infer guilt from the mere receipt of the money. But as we have already pointed out a person may participate in an arrangement at any time prior to a final agreement. Before a final agreement is made there must be a meeting of the minds as to all the essential terms. Obviously in this case one of the terms to be settled prior to reaching a final agreement was the price to be paid. It cannot be doubted from the evidence herein that Byas participated in the arrangement, at least to that extent.

█ The appellant has put forth an ingenious argument to the effect that the word "arranging" in the statute really means "procuring" and thus the rule, as stated in Boykin v. United States,[6] that the gist of the crime under Section 2707 of Title 22 of our Code is the procuring of a woman for the purpose prohibited, applies. The only trouble with this contention is that the Boykin case deals with language which the statute, since its amendment,[7] no longer contains.[8] The word "procuring" was removed. Nothing therefore that was said in the Boykin case in regard to "procuring" can be applicable here. Nor can we suppose that, although the legislature removed the word "procuring" from the statute and used the word "arranging", it was still intended that "arranging" mean "procuring". "Arranging" may include within its meaning the act of procuring as a part of the arrangement, but it certainly does not confine itself to only that activity. It is a word of much broader significance

5. Shreve v. United States, 9 Cir., 1939, 103 F.2d 796, 812; Harwood v. Dysart Consol. School Dist., 1946, 237 Iowa 133, 21 N.W.2d 334.

6. 1942, 76 U.S.App.D.C. 147, 130 F.2d 416.

7. Footnote 1, supra.

8. Prior to amendment this section read: "Any person who shall receive any money * * * on account of procuring for or placing in a house of prostitution or elsewhere any female for the purpose of causing her illegally to cohabit with any male person or persons shall be guilty of a felony * * *."

which embraces within its meaning many more activities than the one of procuring.

■ The next series of objections made by the appellant involve the withdrawal of the first charge and the giving of a new one after the luncheon recess. There is no merit to the appellant's contention that the time lapse between the two charges, a matter of fifty minutes, worked to his prejudice by leaving an erroneous impression of the law in the minds of the jurymen for them to think over during lunch. The simplest answer to this is that an erroneous instruction may be withdrawn or corrected [9] at any time, at least prior to the time that the jury retires to deliberate.[10]

■ Likewise, appellant's argument that the first charge was not withdrawn and therefore the new charge only confused the jury to the point where it was impossible to tell which of the two charges it relied on so that as a result prejudicial error was committed, lacks soundness. We do not quarrel with the law as he states it,[11] but we cannot agree to his interpretation thereof. To do so would be to place too much emphasis on the exact meaning of the word "withdraw". We do not deny that the trial judge did not say to the jurors, "I withdraw the charge I made to you before lunch". But how more effectively could he have conveyed to them that they were to ignore the first charge and rely solely on the new one in considering the case than the way in which he did [12] unless indeed we were to formalize a rule for this jurisdiction which would require a judge to always use the word "withdraw"? Looking to the reason of the rule rather than the manner in which it is stated, it is obvious that its purpose is to prevent confusion in the minds of the jurymen and to have it clearly understood by them what

the legal basis for their verdict must be.[13] Thus where two inconsistent instructions are given, the effect of one or the other, depending on where the error lies, must be removed from their minds before they can be allowed to retire to deliberate.[14]

■ Appellant's final contention is that his conviction should be set aside, because his challenge to the array on the ground of government employment was disallowed by the court and as a result he was forced to exercise his peremptory challenges which were insufficient in number to eliminate three such jurors so that there remained on the jury three government employees who were prejudiced against him because they belonged to a class which he had systematically sought to exclude. This contention has been most recently answered by the Supreme Court in Frazier v. United States,[15] where it said: "The right of peremptory challenge is given, of course, to be exercised in the party's sole discretion and was so exercised here. We do not question petitioner's privilege to utilize his peremptory challenges as he did. But the right is given in aid of the party's interest to secure a fair and impartial jury, not for creating ground to claim partiality which but for its exercise would not exist."

■ Though a party may so exercise his peremptory challenges as to antagonize a juror or group of jurors, it is a matter with which this court has no concern. We will not entertain an appeal based on a complaint that because of an inartful exercise of his right to peremptorily challenge jurors a party has created such prejudice as to deny for himself a fair trial.

The other contentions of appellant have been carefully examined and have been found to lack merit. The case is accordingly

Affirmed.

9. Nicola v. United States, 3 Cir., 1934, 72 F.2d 780, 787; Blockburger v. United States, 7 Cir., 1931, 50 F.2d 795, 798.

10. Baker v. United States, 5 Cir., 1946, 156 F.2d 386, 390, certiorari denied 1946, 329 U.S. 763, 67 S.Ct. 123, 91 L. Ed. 657.

11. Thomas v. United States, 6 Cir., 1945, 151 F.2d 183, 186.

12. See Green v. State, 1896, 97 Tenn. 50, 36 S.W. 700.

13. Mills v. United States, 1897, 164 U.S. 644, 649, 17 S.Ct. 210, 211, 41 L.Ed. 584, 585.

14. Id.

15. Frazier v. United States, 1948, 335 U.S. 497, 69 S.Ct. 201, 206, 93 L.Ed. 187, rehearing denied 1949, 336 U.S. 907, 69 S.Ct. 488, affirming 1947, 82 U.S.App.D.C. 332, 163 F.2d 817.