[Civ. No. 36039. Second Dist., Div. Five. July 22, 1970.]

MELVIN LEE ANDERSON, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

[Civ. No. 36112. Second Dist., Div. Five. July 22, 1970.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MELVIN LEE ANDERSON, Real Party in Interest.

(Consolidated Cases.)

## COUNSEL

Flynn & Rafferty and Owen P. Rafferty for Petitioner in No. 36039 and for Real Party in Interest in No. 36112.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Eugene D. Tavris, Deputy District Attorneys, for Real Party in Interest in No. 36039 and for Petitioner in No. 36112.

## OPINION

**SELBER, J.** * — The facts in this case which gave rise to consolidated petitions are not in dispute. On November 6, 1969, at approximately 11:30 p.m., on Torrance Boulevard, near its intersection with Crenshaw Boulevard, Officer Sanders observed a truck towing a trailer upon which was tied a part of a red Corvette automobile body. The front fenders of the Corvette appeared to have been "sawed off" at the fire wall. Otherwise the Corvette body was undamaged and the paint was shiny and in good condition. It was a relatively new model of about three to four years vintage and possessed no license plates.

Upon noting these facts, Officer Sanders considered them to be unusual. The car did not appear to him to be "a piece of junk" that somebody would be dumping. Further, he was aware that many such cars are stolen, stripped and then cut into pieces and dumped with the identification number removed. The officer decided to investigate further and stopped the truck which was occupied by three minors. Conflicting statements were made by them regarding their possession of the vehicle. They were arrested and the Corvette seized. One of the minors revealed that defendant Anderson, who was not present in the truck at the time of the arrest, had given him the Corvette with instructions to dispose of it so that Anderson might collect insurance on the car.

In a complaint filed in the Municipal Court of the Inglewood Judicial District, defendant, Melvin Lee Anderson, was charged in count I with a violation of section 496 of the Penal Code, receiving stolen property,[1] and in count II with a violation of section 548 of the Penal Code, defrauding an insurer, in that he did unlawfully "destroy, secrete, abandon, and dispose of personal property, to wit, a 1966 Corvette automobile, license number UVP 872, which was at the time insured against loss and damage by fire, theft, and embezzlement, and any casualty, with intent to defraud and prejudice the insured."

On December 31, 1969, immediately prior to the preliminary hearing, defendant moved to suppress evidence pursuant to section 1538.5 of the Penal Code. That motion was granted as to both counts and specifically limited to the physical evidence of the body of the Corvette automobile. At the preliminary hearing, People presented the testimony of several witnesses, including that of two of the minors who were granted immunity, as

---

*Assigned by the Chairman of the Judicial Council.

[1]People presented no evidence on count I at the preliminary hearing and accordingly it was dismissed by the magistrate. No issue regarding this count is raised by either party in connection with their respective petitions.

to incriminating statements made by the defendant. Other witnesses testified to theft reports and insurance claims regarding the "stolen" Corvette. The court dismissed count I and bound the defendant over for trial on count II. An information was then filed by the People in the superior court charging the defendant with a violation of section 548 of the Penal Code. Thereafter, defendant moved to set aside the information pursuant to section 995 of the Penal Code and People requested a special hearing to relitigate de novo the validity of the search or seizure pursuant to section 1538.5, subdivision (j) of the Penal Code. Both matters were heard by respondent court on January 30, 1970, following which the court denied defendant's motion under section 995 of the Penal Code and again suppressed the evidence of the body of the Corvette automobile, in accordance with the prior order of the municipal court.

Both People and the defendant have filed petitions with this court seeking relief from the orders of respondent court. People seek a writ of mandate to require the respondent court to annul its order of January 30, 1970, suppressing that evidence which is the body of the Corvette. Defendant seeks a writ of prohibition restraining respondent court from taking further proceedings against defendant. Defendant contends that there was no legally admissible evidence presented to the court at the preliminary hearing since all of the evidence stemmed from the information provided by the minors who had been illegally detained and was thus the "fruit" of official illegality. (*People* v. *Johnson* (1969) 70 Cal.2d 541 [75 Cal.Rptr. 401, 450 P.2d 865]; *Wong Sun* v. *United States,* 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407].)

In both petitions the primary issue involved is whether Officer Sanders lawfully caused the truck and trailer to be stopped. Accordingly we consolidate the petitions for this opinion.

The salient issue is whether there was a sufficient basis to justify the temporary detention of the truck and its occupants for the purpose of further investigation. There was of course no actual "search" involved in this case, and so the question remains does the mere stopping of the vehicle under the circumstances described constitute such an unreasonable invasion of defendant's constitutional rights to the extent that all evidence subsequently obtained is inadmissible. (See, *People* v. *Cowman* (1963) 223 Cal.App.2d 109, 111 [35 Cal.Rptr. 528]; *People* v. *Henze* (1967) 253 Cal.App.2d 986, 988 [61 Cal.Rptr. 545].)

It is well settled in this state that circumstances short of probable cause for an arrest may justify temporary detention for investigation and questioning. (*People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Martin* (1956) 46 Cal.2d 106, 108 [293 P.2d

52]; *People* v. *Henze, supra,* 253 Cal.App.2d 986, 988.) ▮ In *People* v. *One 1960 Cadillac Coupe* (1964) 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706], the Supreme Court states: "It is well established that a police officer in the discharge of his duties may detain and question a person when the circumstances are such as would indicate to a reasonable man in a like position that such a course is necessary in the proper discharge of those duties. In *People* v. *Mickelson,* 59 Cal.2d 448, we stated at page 450 [30 Cal.Rptr. 18, 380 P.2d 658] '. . . we have consistently held that circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning. . . . Should the investigation then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search. [Citations.]' ▮ And at page 452 we stated as follows: 'We do not believe that our rule permitting temporary detention for questioning conflicts with the Fourth Amendment. It strikes a balance between a person's interest in immunity from police interference and the community's interest in law enforcement. It wards off pressure to equate reasonable cause to investigate with reasonable cause to arrest, thus protecting the innocent from the risk of arrest when no more than reasonable investigation is justified.' "

▮ In *People* v. *Manis* (1969) 268 Cal.App.2d 653, 659 [74 Cal.Rptr. 423], the court states: "The validity of any particular temporary detention involves a determination of fact. While the circumstances which justify temporary detention may be bewilderingly diverse, still we have acquired a rough picture of the situations in which such detention is warranted. 'First, there must be a rational suspicion by the peace officer that some activity out of the ordinary is or has taken place. Next, some indication to connect the person under suspicion with the unusual activity. Finally, some suggestion that the activity is related to crime.' (*People* v. *Henze,* 253 Cal.App.2d 986, 988 . . .)" (See also, *Hood* v. *Superior Court* (1963) 220 Cal.App.2d 242, 245 [33 Cal.Rptr. 782].) ▮ The officer must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (*Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868].) A mere hunch or objective suspicion will not justify a temporary detention. (*Terry* v. *Ohio, supra; People* v. *Perez* (1966) 243 Cal.App.2d 528, 531 [52 Cal. Rptr. 514]; *People* v. *Hunt* (1967) 250 Cal.App.2d 311, 314-315 [58 Cal.Rptr. 385].) ▮ Each case must be judged upon its particular facts, and the reasonableness of the officer's decision to make an investigation is determined in the light of the facts and circumstances as they appeared to him at the time he was required to act. (*People* v. *Collins* *(Cal.App.) 80 Cal.Rptr. 310.)

---

*A hearing was granted by the Supreme Court on October 15, 1969. The final opinion of that court is reported in 1 Cal.3d 658 [83 Cal.Rptr. 179, 463 P.2d 403].

In applying the rules to the factual situation in the instant case, it is our conclusion that there were circumstances sufficiently suspicious and unusual to suggest to the police that the activity of the occupants of the truck may have been connected with crime.[2]

In each of the hearings held pursuant to section 1538.5 of the Penal Code, defendant submitted to the respective courts the case of *People* v. *Callandret* (1969) 274 Cal.App.2d 505 [78 Cal.Rptr. 917]. The magistrate found that case to be "right in point." At pages 11-12 of the reporter's transcript of the hearing of January 30, 1970, respondent court in granting the motion to suppress stated as follows: "Well, were it not for the *Callandret* case I definitely would rule against the defendant in this matter. I don't personally understand the ruling in the *Callandret* case but I think I'm bound by the law and if that is the law I think it would be controlling." Thereafter, respondent court invited the people to take the matter to this court for "a second look." We have taken that second look and conclude that *Callandret* may be correct on its facts but the facts before us are distinguishable.

In *Callandret* the court held that the mere observance of Volkswagen parts in the bed of a pickup truck carrying commercial license plates, driving in a normal manner on the freeway at about 1:30 p.m., presented no unusual or suspicious circumstances, justifying the stopping of the vehicle. At page 507, the court in *Callandret* states: "Prior to stopping the truck in which defendant was riding, all the officer knew was that the vehicle was carrying Volkswagen parts. . . . The vehicle had violated no traffic laws and the officer could point to no unusual circumstances about it which aroused his suspicion. There is certainly nothing unusual or suspicious about the fact that the truck was carrying Volkswagen parts— albeit such parts are frequent targets for thieves. The fact that the parts were covered adds very little. The officer had observed that the vehicle had commercial license plates. Covering items during transport in open

---

[2]A variety of factual situations have been deemed sufficient to authorize temporary detention and investigation similar to that here in question. See, *Jackson* v. *Superior Court* (1969) 274 Cal.App.2d 656, 659 [79 Cal.Rptr. 502]; *People* v. *Manis, supra,* 268 Cal.App.2d 653; *People* v. *Britton* (1968) 264 Cal.App.2d 711, 712 [70 Cal.Rptr. 586]; *People* v. *Cruppi* (1968) 265 Cal.App.2d 9, 12 [71 Cal.Rptr. 42]; *People* v. *Alvarado* (1967) 250 Cal.App.2d 584 [58 Cal.Rptr. 822]; *People* v. *Failla* (1967) 256 Cal.App.2d 869 [65 Cal.Rptr. 115]; *People* v. *Perez* (1966) 243 Cal.App. 2d 528, 531 [52 Cal.Rptr. 514]; *People* v. *McVey* (1966) 243 Cal.App.2d 215, 218-219 [52 Cal.Rptr. 269]; *People* v. *Cowman* (1963) 223 Cal.App.2d 109, 112 [35 Cal.Rptr. 528]; *People* v. *Gibson* (1963) 220 Cal.App.2d 15, 20-21 [33 Cal.Rptr. 775].

trucks is not an unusual commercial practice, even, as here, when the weather was good. Added up, the circumstances do not provide the necessary foundation for the officer's suspicion. 'A mere hunch, without more, that a person may be involved in criminal activity is . . . insufficient.' "

In the present case, the officer observed the body of the Corvette, tied to a trailer, being towed by a truck on the street at 11:30 p.m. The occupants of the truck were three minors.[3] The Corvette appeared to be only three or four years old, and was in good condition except for the fact that the front fenders had been sawed off. It had no license plates. The officer was aware that vehicles of this type were freqently stolen, stripped and then destroyed. The officer considered this to be an unusual situation in that the car was not "a piece of junk" appropriate to be dumped nor did it appear to him that the auto had been in an accident causing it to be towed, inasmuch as there was no damage to the body itself. The fact that this was a relatively new automobile with the fenders sawed off apparently led the officer to the conclusion that it might well be a vehicle which was being prepared for further stripping and ultimate destruction. As People argue, "It would be a most unique accident that would damage *both* of the Corvette's front fenders but would leave the remainder of the vehicle's body apparently unscathed."

There is nothing in the record to suggest any disbelief by the respondent court of the officer's testimony nor the reasonableness of his conclusions. That the converse is true is inherent from the court's statement that it would have found against the defendant except for the fact it deemed the law of *Callandret* to be binding.

Certainly there was not the magnitude of facts or circumstances appearing in *Callandret* as is present in the instant case. There, a commercial vehicle carrying a commercial product was proceeding in a normal manner upon the freeway in broad afternoon daylight. There is no suggestion that the truck in that case was being driven by a minor. In the instant case no apparent commercial enterprise was being conducted. The truck was being driven and occupied by minors. The Corvette was without license. The hour was just prior to midnight. The physical appearance of the Corvette was itself unusual. All of these circumstances, in our opinion, would require an officer, in the proper performance of his duties, to make further investigation. There were substantial circumstances justifying a rational suspicion by the officer that some activity out of the ordinary was

---

[3]Preliminary Hearing transcript, page 4, 11.14-26:

It should be noted that both the preliminary hearing and the hearing on defendant's motion pursuant to 1538.5 of the Penal Code are reported in a single transcript dated December 31, 1969, and entitled "Reporter's Transcript Preliminary Hearing."

taking place, and sufficient indications that the occupants of the truck were engaged in activity related to crime.

In reviewing several cases involving the subject at hand, the court in *People* v. *Cowman,* 223 Cal.App.2d 109, 117 [35 Cal.Rptr. 528], states: "The rationale of all these decisions is that an officer of the law, employed to maintain the peace and to prevent crime, as well as to apprehend criminals after the fact, has both the right and the duty to make reasonable investigation of all suspicious activities even though the nature thereof may fall short of grounds sufficient to justify an arrest or a search of the persons or the effects of the suspects. Experienced police officers naturally develop an ability to perceive the unusual and suspicious which is of enormous value in the difficult task of protecting the security and safety of law-abiding citizens. The benefit thereof should not be lost because the cold record before a reviewing court does not contain all the particularized perceptions which may have been so meaningful at the scene."

We hold that under the particular facts of this case the initial stopping of the truck was reasonable and proper, as was the later questioning of the truck's driver. Accordingly, evidence as to such interrogation and as to what the officer observed after the stopping was admissible. The information obtained by the officers by such interrogation and subsequent observance gave them probable cause for arrest and search. The People are entitled to the writ of mandate.

In defendant's petition for writ of prohibition, his sole contention is that the initial stopping of the truck was unauthorized and unlawful and that, therefore, all subsequent acts and observations of the officers must be condemned and rejected as the "fruit" of official illegality. In view of our holding that the stopping of the truck was lawful, we must reject defendant's contention. Therefore, defendant's petition must be denied.

Let the peremptory writ of mandate issue in 2d Civil No. 36112 commanding respondent superior court to annul and set aside its order granting the motion to suppress evidence and to enter a new order denying defendant's motion to suppress the evidence pursuant to section 1538.5 of the Penal Code.

The petition for a peremptory writ of prohibition is denied. The alternative writ of prohibition is discharged in 2d Civil No. 36039.

Stephens, Acting P. J., and Reppy, J., concurred.