**UNITED STATES of America**

v.

**Sidney W. HARDIN, Appellant.**

**No. 22683.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 4, 1969.

Decided Dec. 22, 1970.

Petition for Rehearing Denied June 10, 1971.

Bazelon, Chief Judge, dissented and filed opinion.

Messrs. Kenneth F. Hickey and Robert J. Hickey (both appointed by this court) for appellant.

Mr. Roger E. Zuckerman, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Mr. David G. Bress, U. S. Atty., at the time the record was filed, also entered an appearance for appellee.

Before BAZELON, Chief Judge, and TAMM and MacKINNON, Circuit Judges.

PER CURIAM:

On June 17, 1967, Sidney W. Hardin shot and killed one Leslie Fredericks. At the trial, the key witness for the Government was Leslie Fredericks, Jr., an eleven-year-old boy, the son of the deceased. Sidney W. Hardin was convicted of second degree murder.

The appellant presents four issues on appeal which we set out below and deal with in order. We find no prejudicial error and accordingly affirm.

I  Did the trial court make sufficient inquiry to determine that eleven-year-old Leslie Fredericks, Jr. was legally competent to testify?

The determination as to whether a person is legally competent to testify as a witness is a matter that rests largely within the discretion of the trial court.[1] Because the exercise of that discretion often rests on factors at trial which cannot be photographed into the record, it should not be disturbed except where "clearly erroneous."[2] Appellant has demonstrated nothing to so mark the trial court's determination concerning the deceased's son. Actually, the record shows that Leslie Fredericks, Jr., understood the meaning of the oath he took to tell the truth.[3] Furthermore, his testimony was logical, responsive, internally consistent and in no way indicates that he did not have the necessary intelligence to testify as to what he observed.

II  Was the evidence supporting the charge of second degree murder sufficient to go to the jury?

On appeal, if the evidence is asserted to be insufficient, it must be reviewed in the light most favorable to the Government, making full allowance for the right of the jury to draw justifiable inferences of fact from the evidence adduced at trial and to assess the credibility of the witnesses before it.[4] The Government's key witness, Leslie Fredericks, Jr., testified that, after his father and the appellant had a fight in which the appellant had smashed a Diet-Rite Cola bottle over the head of the deceased, and after the two men had fought for a spell in a closet of the apartment where the killing occurred, the deceased retired from the fight to the center of the living room. The appellant then went to the kitchen-dinette area of that apartment, took a gun from his pocket and, from 15 to 18 feet away, shot the deceased. After he shot the deceased in the neck with the gun he told his wife "I meant to shoot him in the head." This alone was enough to send the issue of second degree murder to the jury.

III  Did the trial court err in not allowing appellant to testify to a threat allegedly uttered by the deceased to him concerning a third person not a party to this proceeding?

At trial the appellant testified that he and the deceased had an argument earlier that same evening over the gun which appellant had purchased that same day. According to appellant, the deceased had demanded that the appellant give him the gun so that he could kill a third party not a party to this proceeding. He wished to introduce this evidence for the purpose of showing his own state of mind. However, it was admitted that during the course of the affray in the apartment, the appellant had exclusive control of the gun. Also, the alleged conversation was irrelevant and incompetent to show that the deceased intended to kill the appellant nor would such a statement have shown any malice towards the appellant. For these reasons the trial court properly excluded this testimony.

1. Beausoliel v. United States, 71 App.D.C. 111, 113, 107 F.2d 292, 294 (1939) (six-year-old child ruled competent to testify).

2. Doran v. United States, 92 U.S.App. D.C. 305, 205 F.2d 717, cert. denied, 346 U.S. 828, 74 S.Ct. 49, 98 L.Ed. 352 (1953).

3. The witness testified that he understood that he would be punished if he told a lie and that, in this case, he might go to jail. It was also brought out that he attended Sunday School as well as elementary school.

4. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942) ; Crawford v. United States, 126 U.S.App. D.C. 156, 375 F.2d 332 (1967) ; Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947) ; Morton v. United States, 79 U.S.App.D.C. 329, 147 F.2d 28, cert. denied, 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428 (1945).

IV Did the trial court err in its explanation to the jury of the substantive law · on malice, manslaughter, self-defense and lesser included offenses?

■ Appellant here takes issue with the trial court's instructions to the jury. First, the appellant argues that the court committed error[5] in instructing on the use of a deadly weapon, as follows:

> If a person uses a deadly weapon in killing another malice may be inferred from his use of such weapon in the absence of *explanatory or mitigating circumstances.*
>
> You are not required to infer malice from the use of such weapon, but you may do so if you deem it appropriate.
>
> You are instructed as a matter of law that a gun is a dangerous weapon. (Emphasis added.)

Appellant's contention is that the trial court, *sua sponte,* should have made reference to what, in this case, were the possible *explanatory or mitigating circumstances* the jury might consider.

It is our position that the words *explanatory or mitigating circumstances* are self-explanatory and that, even though the court could have given a more detailed instruction *sua sponte* or pursuant to a request by the defense,

failure to do so was certainly not prejudicial error.

Second, the appellant contends that the charge on manslaughter wrongfully put the issue in a posture requiring the jury to determine that the deceased was the aggressor before the appellant could be found not guilty of second degree murder and guilty of the lesser included offense of manslaughter. This simply was not the case. The trial court said:

> It [manslaughter] occurs when the homicide is committed at the time of mutual combat *or* when it is committed in passion or hot blood caused by adequate provocation. (Emphasis added.)

■ If one believes the story as related by the defense, this was a case of self-defense.[6] The defense contends that the trial court went on from this point in the instructions to discuss "heat of passion," "hot blood," "adequate provocation" and then went on to discuss self-defense in terms of the aggressor and the one who was the object of the aggression without elaborating on mutual combat. This argument fails to recognize that the words "mutual combat," like the words "explanatory or mitigating circumstances" discussed above, are sufficiently self-explanatory so as to not require elaboration by the court to convey their intent to a reasonably in-

5. The appellant relies on Williams v. United States, 131 U.S.App.D.C. 153, 403 F.2d 176 (1968), but the same instruction was given there and properly applied by the jury and we see no reason to conclude there is error in the charge here because the result is different. The words used are in common use and fully capable of being understood and applied by the jury without additional definition.

6. The dissent argues that the issue of mutual combat was very close but mutual combat alone is not a true alternative ground for mitigating a murder to manslaughter; it is merely one of the circumstances from which the jury could find adequate provocation. Since the court instructed in detail on adequate provocation, a particularized instruction on mutual combat was not necessary.

Defense counsel said he was "satisfied" with the court's instructions on everything except its refusal to charge on assault with a dangerous weapon as a lesser included offense and his argument to the jury was based on self-defense.. This in turn was based on an attempt to get the jury to believe the testimony of appellant and his wife and to disbelieve that of Leslie Fredericks, the minor son of the victim. Defense counsel argued, "Did the shooting take place as eleven-year-old Leslie Fredericks said or did it take place as the defendant said?" Thus, the issue of the instruction on "mutual combat" assumes more importance in the dissent than it actually did in the minds of the lawyers and the judges who tried the case and at the most is harmless error. Fed. R.Crim.P. 52.

telligent jury.[7] Since the charge was given in the disjunctive, the jury was presented with alternative grounds on which to find appellant guilty of manslaughter and we do not think that it was error for the court to fail to elaborate, *sua sponte*, on the alternative which explained itself.

The appellant further contends that the trial court failed to give a proper instruction on recklessness and that this was fatal. The simple answer to that contention is that appellant, by his own testimony, precluded the possibility that he was merely grossly negligent— he either shot the deceased in the heat of passion while engaged in mutual combat or he shot the decedent in self-defense or he maliciously killed the decedent. By his own admission, he did not kill the deceased while merely handling the gun in a negligent manner. Thus the facts of the case did not present a need for a charge of recklessness.

Third, the charge on self-defense was more extensive, in this case, than the one this court upheld in Williams v. United States, 131 U.S.App.D.C. 153, 403 F.2d 176 (1968). The only variance from the recommended charge contained in the Junior Bar Manual that is of any concern to us was the use of the words *honest belief* instead of *actual belief*. We find that, although the word *actual* would be preferred to the use of the word *honest*, the exchange did not impose some higher standard of belief in this case, but only required a finding that the appellant *really believed* that he was in immediate danger. This is a fair statement of the law of self-defense.

Fourth, the appellant was not entitled to have the lesser included offense of assault with a dangerous weapon submitted to the jury as an alternative verdict because it was uncontradicted and established beyond any doubt that the deceased died of a gunshot wound inflicted by the appellant.

With respect to these instructions to the jury, in addition to the above comments, we note that no objections were taken to any of them at the time of trial. We have also reviewed the court's charge in its entirety and we consider that the question of appellant's guilt or innocence was fairly presented to the jury and that there is no showing here of plain error affecting substantial rights which justifies or requires reversal. *Cf.* Kelly v. United States, 124 U.S.App.D.C. 44, 361 F.2d 61 (1966).

Affirmed.

BAZELON, Chief Judge (dissenting):

I concur in parts I, II, and III of the court's opinion, but because I consider the trial judge's instruction on manslaughter to be defective, I must dissent from the court's affirmance of this conviction.

I agree with the court's opinion that the first two sentences of the instruction stated the law correctly:

> Manslaughter is the unlawful killing of a human being without malice aforethought.
>
> It occurs when the homicide is committed at the time of mutual combat *or* when it is committed in passion or hot blood caused by adequate provocation. [Emphasis added.]

Unfortunately, the next two sentences, while purporting to restate the above definition and to specify the elements in greater detail, concentrated exclusively on the second alternative:

> In other words, in order to reduce the offense from second degree murder to manslaughter there must be shown *ample provocation and sudden passion* and both of these things must exist at the time the fatal blow is struck.
>
> The elements the Government must prove in order for you to find the defendant guilty of manslaughter are,

---

7. *See* Byrd v. United States, 114 U.S.App. D.C. 117, 312 F.2d 357 (1962); Byas v.

United States, 86 U.S.App.D.C. 309, 311–312, 182 F.2d 94, 96–97 (1950).

one, that the defendant inflicted a wound or wounds from which the deceased died; two, that the defendant shot the deceased in *sudden passion* without malice; that the defendant's sudden passion was aroused by *adequate provocation*. [Emphasis added.]

The remainder of this lengthy instruction elaborates upon the notions of "sudden passion" and "provocation."[1] Although appellant's main defense was mutual combat, at no time did the judge even mention this again—much less elaborate upon it—as a separate ground for a conviction of manslaughter.

This was not a case of robbery or assault between two strangers. It involved two old friends who had spent the evening drinking together; upon their return to the apartment where they both lived with their families, this tragic fight ensued. No one denied that the deceased willingly continued the fight—at least for a time—after it began. In such circumstances, the crucial issue of mutual combat must necessarily be very close, and the adequacy of the instruction on mutual combat becomes of critical importance.

We must remember that jurors do not take the instructions with them into the jury room; therefore we cannot rely heavily upon nice calculations as to what is strictly implied by the grammar of sentences which stand alone. Instructions must be judged as a whole. Given the general tenor of this one, it is too much to expect that the jury caught the significance of the word "or" in the second sentence and correctly understood the relation of mutual combat to manslaughter.

A nontrivial error in an instruction defining the elements of one of the offenses of which a defendant might be found guilty is certainly plain error requiring reversal of the conviction.[2]

---

1. The rest of the instruction reads:

When I say sudden passion, I mean to include rage, resentment, anger, terror, and fear. So when I used the expression sudden passion I include all of these.

Provocation in order to be sufficient to reduce the defense of murder to manslaughter must be adequate, must be such as might naturally induce a reasonable man in the anger of the moment to commit the deed.

It must be such provocation as would have like effect upon the mind of a reasonable or average man causing him to lose self-control.

In addition to the great provocation there must be passion and hot blood caused by that provocation.

Mere words, however, no matter how insulting, offensive or abusive, are not adequate to reduce a homicide, although committed in passion, provoked as I have explained, from murder to manslaughter.

If you find the Government has proved all of these elements beyond a reasonable doubt, then you may find the defendant guilty of manslaughter.

If, however, you find the Government has failed to prove any one or more of these elements, then you cannot find the defendant guilty of manslaughter and you must find him not guilty.

2. Fed.R.Crim.P. 52(b). *See* Byrd v. United States, 119 U.S.App.D.C. 360, 342 F.2d 939 (1965).