**Napoleon GRAY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 6307.**

District of Columbia Court of Appeals.
Argued May 17, 1972.

Decided July 11, 1972.

---

Joel H. Skirble, appointed by this court, for appellant.

Robert E. L. Eaton, Jr., Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Lawrence H. Wechsler, Asst. U. S. Attys., were on the brief, for appellee.

Before KERN, NEBEKER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

The issue raised by this appeal is whether a police officer, who observed appellant pass money to another on a city street which he considered to be in a "high narcotics area", had on that basis reasonable grounds to believe that a sale of narcotics was afoot, and that the individuals observed were armed and dangerous warranting a *Terry*[1] frisk before seeking identification or other information. The frisk produced a side arm which was the subject of a motion to suppress that was overruled. The defense waived a jury, stipulated to the existence of the gun, and submitted, without further trial, on the evidence adduced on the motion to suppress. Appellant was found guilty by the court of carrying a pistol without a license in violation of D.C.Code 1967, § 22–3204.

The evidence may be summarized as follows. On December 21, 1971, at approximately 4:15 p.m., Officers Rosa and Skirchak were on patrol in a private car in the area of Alabama Avenue and Stanton Road, S.E. The officers were assigned to the Seventh District Tactical Squad and accordingly were dressed in old clothes. As they were heading south on Alabama Avenue, the officers observed two men,[2]

1. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2. One of these men was described as wearing a grey coat and the other a light or white coat.

one of whom Officer Rosa saw "passing money" to the other.

The officers considered this to be a "high narcotics area" so they decided to place the two men under surveillance. Officer Rosa, who was driving the car, made a U-turn and parked alongside a tractor trailer. The officers positioned themselves behind the truck and maintained an observation of the two men for about six minutes during which time they saw appellant and a male companion join the other two. Officer Rosa then saw appellant pass paper money to a man in a light trench coat who also received some change from appellant's companion.

The officers testified that during this surveillance their suspicions were aroused by the actions of the four men in looking around as the money was being passed. According to their testimony, the foregoing conduct led the officers to believe that a narcotics transaction was in progress.

The officers decided to investigate further and approached the men for the purpose of ascertaining their identification and to see why they were acting in what they described as a suspicious manner. As the officers neared the group, the man in the light coat fled after apparently being warned by the man in a grey coat who walked away entering a nearby store.

Officer Rosa approached appellant and his companion who had remained there, with his "card" out and announced "police", whereupon appellant "took a few steps back". Officer Rosa then patted appellant on the side and felt a bulge[3] through his coat. Keeping his hand on the bulge, Officer Rosa immediately inquired as to what this was, to which appellant responded, "Nothing". The officer then removed a loaded .25 caliber automatic pistol from a holster on appellant's belt and arrested him. The companion was also patted down and, although nothing was found on him, he was transported to the precinct

because he could not produce identification.

Neither of the officers knew the appellant or the other men and there was no other testimony by either officer that might support a self-protective frisk for weapons on the ground that there was reason to believe appellant was armed and dangerous.

In attempting to justify the reasonableness of the frisk, the Government relied principally on the fact that the officers considered the area where appellant was arrested to be a "high narcotics area", that they had observed the suspects looking around as money was passed and that appellant took a few steps backward when approached by Officer Rosa who, although dressed in old clothes, identified himself as a policeman. At argument counsel for the Government conceded that absent the fact that appellant took a few steps backward, there would be no justification for a pat-down of appellant. The Government maintained, however, that the frisk was within the bounds of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In that case the Supreme Court said that a police officer may frisk a suspect where he

. . . observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. . . . [392 U.S. at 30, 88 S.Ct. at 1885.]

---

3. Officer Rosa testified that the bulge felt like a gun and a holster.

■ The facts of this case clearly do not meet that test. There is no testimony or evidence indicating that a crime of violence was about to occur or had occurred.[4] Nor does the mere passing of money on a street, which the arresting officers characterized as a "high narcotics area" give reasonable grounds to conclude that a narcotics transaction is taking place.[5]

In Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), the Supreme Court, citing Terry v. Ohio, *supra,* said, "In the case of the self-protective search for weapons, [the officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." 392 U.S. at 64, 88 S.Ct. at 1903.

In the case at bar there is little, if any, evidence from which we might conclude that the officers had either an articulable suspicion[6] or reasonable grounds to believe that the suspects, appellant included, were armed and dangerous. The testimony of the officers fails to show "specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant [an] intrusion"[7] upon the protection of the fourth amendment. On approaching appellant, after a surveillance of about six minutes, Officer Rosa did not seek identification data or information of any sort regarding what he considered to be suspicious circumstances, but instead immediately patted appellant down.

■ Absent unusual conduct that would lead Officer Rosa reasonably to conclude that criminal activity was afoot and that appellant was armed and dangerous, we hold that his pat-down of appellant violated the fourth amendment's protection against unreasonable "intrusion". Accordingly, as we read the controlling Supreme Court decisions, the pistol seized was the result of an illegal search and should have been suppressed.

Reversed.

NEBEKER, Associate Judge (concurring):

I concur in the opinion of the court and add the following observation.

We have come too far in law enforcement and police-community relations to permit officers to be so untrained in the basic law as to operate on the misapprehensions revealed herein, especially that the failure to carry identification can alone under these circumstances warrant an arrest. Moreover, we cannot fail to recognize that the continued vitality of the holding in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), rests on the assumption that law enforcement will sparingly use and apply the police power recognized in that decision and not attempt to disguise harassment in its mantle. *See* Williams v. United States, D.C.App., 287 A.2d 814 (1972).

4. In Terry v. Ohio, *supra* note 1 at 6, 88 S.Ct. 1868, the arresting officer concluded, after observing the suspects for considerable time, that they were casing a store in the preparation of a robbery and therefore were very likely armed. *Also see* note 6 *infra.*

5. *See* Munn v. United States, D.C.App., 283 A.2d 28 (1971); Peterkin v. United States, D.C.App., 281 A.2d 567 (1971).

6. *See* Terry v. Ohio, *supra* note 1, at 33, 88 S.Ct. 1868 (Harlan, J., concurring).

7. *Id.* at 21, 88 S.Ct. at 1880.