Milton James SMITH, Appellant,

v.

UNITED STATES, Appellee.

No. 6234.

District of Columbia Court of Appeals.

Argued July 25, 1972.

Decided Sept. 18, 1972.
Rehearing En Banc Denied
Nov. 10, 1972.

—————◆—————

Henry J. Monahan, Rockville, Md., appointed by this court, for appellant.

Lawrence T. Bennett, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Paul F. Healy, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and FICKLING and PAIR, Associate Judges.

PAIR, Associate Judge:

■ After trial by a jury, appellant was found guilty of petit larceny[1] and sentenced to imprisonment for one year. On appeal he assigns as error (1) the denial of his motion to suppress as evidence a stereo tape deck seized at the time of his arrest,[2] (2) the consideration of his motion to suppress in the presence of the jury, (3) the admission into evidence of an exhibit which was not identified sufficiently,[3] and (4) the trial court's failure to instruct the jury on four of the five elements of petit

larceny. Finding no reversible error, we affirm.

The facts are not in dispute. Assigned to the Old Clothes Unit, Officer Cunningham of the Metropolitan Police Department, Second District, was, on July 3, 1971—the day of the arrest—on a "[r]outine patrol, looking for burglary suspects or people breaking into automobiles." He first observed appellant and an unidentified companion walking west on Calvert Street and looking into parked automobiles. The officer's observation of appellant and his companion continued for approximately one and one-half hours,[4] during which time

> [appellant] walked throughout the area near the Sheraton Park Hotel and around Garfield Street, Woodley Road, 28th, 29th, 27th Streets and that area, looking in cars. I observed him look into, . . . a Dodge Charger. They stopped by the car, they looked in it, they walked away from it, went back to it and then they left the automobile.

Appellant and his companion were then observed to proceed north on Connecticut Avenue toward the National Zoo and about 3:30 p. m. enter the grounds of the zoo through the Connecticut Avenue gate. Officer Cunningham waited at the same entrance for his partner to return with the cruiser and the two officers then patrolled the grounds of the zoo for "approximately 25 minutes trying to pick them up again." Unsuccessful in locating appellant and his companion, the officers returned to the

---

1. D.C.Code 1967, § 22–2202.

2. The motion to suppress was made near the end of the Government's case and was apparently permitted under the second exception of Super.Ct.Crim.Rule 12 (b)(3). We have said repeatedly that the orderly administration of justice mandates that motions to suppress be heard pre-trial and that it is only in exceptional cases that such a motion should be entertained at trial. Jenkins v. United States, D.C.App., 284 A.2d 460 (1971); Jones v. United States, D.C.App., 282 A. 2d 561 (1971); Bailey v. United States, D.C.App., 279 A.2d 508 (1971); District of Columbia v. Faison (Nebeker, J., con-

curring), D.C.App., 278 A.2d 688 (1971); Nicks v. United States, D.C.App., 273 A.2d 256 (1971); cf. Brown v. United States, D.C.App., 289 A.2d 891 (1972).

3. At oral argument counsel for appellant did not press the third claim of error and we consider it as having been abandoned.

4. We note that the close and extended surveillance of appellant was more consonant with sound police work than the precipitate confrontation disapproved of in Gray v. United States, D.C.App., 292 A.2d 153 (1972).

Connecticut Avenue entrance to the zoo and waited. About 4:00 p.m., as the officers were standing beside their cruiser, appellant and his companion were observed again walking out of the gate of the zoo. Appellant was at that time carrying a brown paper bag and Officer Cunningham remembered that the suspect was carrying no such bag when he went into the zoo. Officer Cunningham testified that "[w]hen I saw them, they saw us. Then the unidentified subject and [appellant] split . . ." and that the unidentified subject then crossed Connecticut Avenue and began to run, pursued by Officer Cunningham's partner. Officer Cunningham testified further that appellant continued to walk and "I told him to stop, and I told him I was a police officer and he stopped. And I walked up to him and I said, 'Put the paper bag on the ground.' . . . He did this. The bag opened a little bit and I could observe a black box, which appeared to be a tape deck. At this time I placed him under arrest." [5]

In response to a question by the court, the officer said, "I didn't know what was in the bag. I knew it was something square shaped, and I had an idea of what would be in the bag from past experiences." The officer was then asked, "What would you assume would be in the bag?" to which the officer replied, "Stereo tape deck or a radio of some kind."

It is the arrest and seizure of the tape deck (following this sequence of events) which we are asked to condemn as violative of appellant's fourth amendment rights. We decline to so do. The record discloses a prolonged course of suspicious conduct which a trained police officer could reasonably expect to culminate in a theft of something from a parked automobile. It is true, of course, that while appellant was in the zoo grounds he was not within the sight of the officers, but it is uncontroverted that when he entered the zoo he had nothing in his hands and that when he emerged he had a paper bag containing what appeared to be a square shaped article. Based on his experiences and his observations of appellant's highly suspicious conduct, the officer, in our view, had reasonable grounds to believe that the bag contained the proceeds of a crime.[6]

Considering the totality of the circumstances, including the flight [7] of appellant's companion, the officer commendably adopted an intermediate response as suggested by Mr. Justice Rehnquist, speaking for the Court, in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 1923, 32 L.Ed. 2d 612 (1972):

In *Terry* this Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner

5. At the time of the arrest, Officer Cunningham had no report of the theft of any tape deck in that general area. Sometime after 5:00 p. m. Mr. Gregg Allen, the complaining witness, reported that a tape deck, later identified as the one found in the possession of appellant, had been stolen from his automobile while parked at the zoo.

6. *See* Jones v. United States, D.C.App., 286 A.2d 861 (1972).

    What we say today in no way attempts to extend *Terry*. We recognize that at the point appellant was halted, he was "seized." The fourth amendment, however, does not proscribe all seizures, only "unreasonable seizures." We view the request of Officer Cunningham to "put the bag down," as reasonable under the circumstances. The officer was

not required to speculate as to the contents of the bag. What is presented in this factual situation, therefore, is a *Terry* stop, not a *Terry* frisk. *See and compare* Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), *with* Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

7. Flight may at times support an inference of guilt. However, such conduct, when viewed in the totality of the circumstances may always be considered on the issue of probable cause and may tip the scales. Hinton v. United States, 137 U.S.App.D.C. 388, 424 F.2d 876 (1969); *see also* United States v. Rubio, 404 F.2d 678 (7th Cir. 1968), cert. denied, 394 U.S. 993, 89 S.Ct. 1482, 22 L.Ed.2d 770 (1969).

approach a person for the purpose of investigating possible criminal behavior even though there is no probable cause to make an arrest." 392 U.S., at 22 [, 88 S.Ct. 1868 at 1880]. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. See *id.*, at 23 [, 88 S.Ct. 1868 at 1881]. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. *Id.*, at 21–22, [88 S.Ct. 1868 at 1879–1880]; see Gaines v. Craven, 448 F.2d 1236 (CA9 1971); United States v. Unverzagt, 424 F.2d 396 (CA8 1970).[8]

In the instant case, as in Jenkins v. United States, D.C.App., 284 A.2d 460 (1971), and United States v. Unverzagt, 424 F.2d 396 (8th Cir. 1970), the officer did not know at the time he stopped appellant that a crime had in fact been committed, but he certainly had reasonable basis for believing that further investigation was indicated. As a preliminary consideration, therefore, the officer was entitled to "maintain the status quo momentarily", *Adams, supra*, and it was at this early stage of the confrontation that the tape deck came into view. Thus at the time of the arrest, the officer had probable cause to believe that appellant was possessed of the proceeds of crime within the purview of D.C.Code 1967, § 23–581(a)(1)(B) &

(C), and (2)(A) (Supp. V, 1972). As stated by Mr. Chief Justice Burger (then Burger, J.):

'[P]robable cause is not to be evaluated from a remote vantage point of a library, but rather from the viewpoint of a prudent and cautious police officer on the scene at the time of arrest. The question to be answered is whether such an officer in the particular circumstances, conditioned by his observations and information, and guided by the whole of his police experience, reasonably could have believed that a crime had been committed by the person to be arrested. . . .[9]

On appeal the Government must be afforded all legitimate inferences from uncontroverted facts established by the evidence, *Jenkins, supra*. We are, therefore, unable to conclude that any of appellant's constitutional rights were violated when he was requested to put the bag down. Appellant apparently concedes that once the officer saw the contents of the bag there existed probable cause [10] for arrest. Accordingly, the trial court did not err when it denied the motion to suppress.

We consider secondly appellant's claim that the motion to suppress should have been heard out of the presence of the jury. At the commencement of the trial, appellant's counsel was asked if there were any preliminary matters to be taken up, "such as search and seizure." Counsel indicated that "[f]rom my understanding there was not a matter of search, but of abandonment under the Fourth Amendment." It was only after direct examination of the Government's last witness that counsel approached the bench and indicated that he

8. *See* Lee v. United States, 95 U.S.App. D.C. 156, 221 F.2d 29 (1954); United States v. Lee, D.C.App., 271 A.2d 566 (1970); Anderson v. Super. Ct. of Los Angeles County, 9 Cal.App.3d 851, 88 Cal.Rptr. 617 (1970).

9. Jackson v. United States, 112 U.S. App.D.C. 260, 262, 302 F.2d 194, 196 (1962). *See also* Bell v. United States,

102 U.S.App.D.C. 383, 254 F.2d 82, cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958); Jenkins v. United States, D.C.App., 284 A.2d 460 (1971); Munn v. United States, D.C.App., 283 A.2d 28 (1971).

10. D.C.Code 1967, § 23–581(a)(1)(B) & (C), and (2)(A) (Supp. V, 1972).

wished to make a suppression motion. The court advised counsel that the motion would be considered when submitted in writing and after the court reporter had transcribed the testimony. Defense counsel then commenced to cross-examine the police officer and, during a bench conference, the following colloquy ensued:

THE COURT: Are you developing information for the motion to suppress? If it is, I think it would be better if we called the officer back on the motion to suppress.

MR. SACCARDI (Defense counsel): I think it is or should be done, during the trial.

THE COURT: We will have the officer back, and you may interrogate him on the legality of the arrest, and any other witnesses you wish to have here. If you are proceeding on probable cause, I will have to excuse the jury and we can proceed on that. I don't think that is for the jury's determination.

MR. SACCARDI: I don't think they even know what we are talking about.

THE COURT: If you get into the interrogation of probable cause, I am going to excuse the jury.

MR. HEALEY (Government counsel): Your Honor, I think this is like a judgment of acquittal. You could hear it and still take it out of the hands of the jury. I would like to make a motion at this time that his motion was untimely and should not be heard at this time.

MR. SACCARDI: I realize the motion is untimely, but I didn't discover some of the facts until today.

THE COURT: I don't think the defense counsel is in the position to waive the defendant's rights under the Fourth Amendment.

MR. SACCARDI: I must say the defendant has given me little, almost no cooperation.

THE COURT: I will let you proceed. Go ahead.

■■ Appellant now urges, and for the first time, that it was error to take testimony on the issue of probable cause in the presence of the jury. As a general rule, absent some showing of plain error, courts in this jurisdiction have refused to notice claims of error raised for the first time on appeal.[11] In this case there has not been, in our view, any such showing of prejudice as to warrant invocation of the plain error doctrine. *See* Hill v. United States, D.C. App., 280 A.2d 925 (1971). While we strongly disapprove of the procedure followed in this case, it is clear from the record that it was appellant's trial counsel who, over the Government's objections,[12] urged, with respect to the motion to suppress, that, "I think it is or should be done during the trial." One cannot invite error[13] and then complain of a situation which he has created.[14]

■ Appellant claims finally that the trial court committed plain error in failing to adequately instruct the jury on the elements of petit larceny. The short answer to this contention is that notwithstanding Superior Court Criminal Rule 30, trial counsel neither submitted written instructions nor objected to the court's instructions to the jury. *See* Ginyard v. United States, D.C.App., 232 A.2d 590 (1967).

11. Bunter v. United States, D.C.App., 245 A.2d 839 (1968). *See also* Harris v. United States, 112 U.S.App.D.C. 100, 299 F.2d 931 (1962); Kelly v. District of Columbia, D.C.Mun.App., 102 A.2d 308 (1954).

12. *See* Roe v. United States, 316 F.2d 617 (5th Cir. 1963).

13. *See* United States v. Scoblick, 124 F. Supp. 881 (M.D.Pa.1954), aff'd, 225 F.2d 779 (3d Cir. 1955); United States v. Katz, 78 F.Supp. 435 (M.D.Pa.1945), aff'd, 173 F.2d 116 (3 Cir. 1949); *cf.* United States v. Brooks, 146 U.S.App. D.C. 1, 449 F.2d 1077 (1971).

14. Byas v. United States, 86 U.S.App.D.C. 309, 182 F.2d 94 (1950); Laney v. United States, 54 App.D.C. 56, 294 F. 412 (1923); United States v. Greenberg, 419 F.2d 808 (3d Cir. 1969).

Moreover, trial counsel twice expressed satisfaction with the court's instructions and, while such instructions were not a model of clarity, they were, in our opinion, sufficient to inform the jury of the elements of the offense.

The judgment of conviction is affirmed.

FICKLING, Associate Judge (dissenting):

I have no disagreement with that part of the majority's holding that the officer had a reasonable basis for believing that further investigation of appellant was required when he emerged from the zoo. In light of the course of conduct which he had observed,[1] the officer's stopping of appellant was sound, commendable police action. However, when an officer confronts a citizen on less than probable cause grounds,[2] the scope of that confrontation must be severely limited.[3] When, as in this case, an officer has no fear[4] that the suspect may be armed, the officer should limit his actions to "[a] brief stop of [the] suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information. . . ."[5]

In the instant case the officer's conduct overreached the scope of an allowable *Terry*[6] stop. The officer's own testimony indicated he had no fear that there was a weapon in the bag; he stated: "I had an idea what would be in the bag. . . . [A] [s]tereo tape deck or a radio of some kind." In this situation, requiring appellant to put the bag on the ground could serve no legally allowable purpose. The majority justified this request as an act "maintaining the status quo," however, status quo is defined as "the state in which something is: the existing state of

affairs."[7] Here the officer *required* the appellant to alter the status quo—an alteration that, in my opinion, was tantamount to a search and seizure without probable cause.[8] The only purpose for ordering the appellant to put the bag on the ground was to give the officer an opportunity to confirm his suspicion.

The majority does not cite a single case, nor have I found one, in which a suspect was *required to remove or put down his* personal belongings unless the officer feared for his safety or probable cause existed for the search or arrest of the suspect. The delicate nature of a confrontation based on less than probable cause grounds has been highlighted in the hundreds of "stop and frisk" cases since Terry v. Ohio, *supra*. The fourth amendment will not allow that confrontation to include a search for the proceeds of a crime on mere suspicion; there must be probable cause. I therefore must respectfully dissent.

---

1. See majority opinion at 65–66.

2. There is no contention that probable cause for the arrest or search existed before the tape deck came into view.

3. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

4. See text, *infra*.

5. Adams v. Williams, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

6. Terry v. Ohio, *supra* note 3.

7. Webster's *Third New International Dictionary* (P.B.Gove ed. 1969).

8. *Cf.* Gray v. United States, D.C.App., 292 A.2d 153 (1972); Irwin v. Super. Ct. of Los Angeles County, 1 Cal.3d 423, 82 Cal.Rptr. 484, 462 P.2d 12 (1969).