Abraham **WILLIAMS**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 21362.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 18, 1968.

Decided Oct. 9, 1968.

Petition for Rehearing Denied
Oct. 30, 1968.

Mr. John C. Scott, Washington, D. C. (appointed by this court), for appellant.

Mr. J. James McKenna, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before WRIGHT, MCGOWAN and ROBINSON, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

Appellant was tried in the District Court for second degree murder and convicted of the lesser included offense of manslaughter. He was sentenced to imprisonment for from two to six years. On appeal he argues that his claim of self-defense was prejudiced by a series of errors on the part of the trial judge, and that the Government's evidence was insufficient to convict. We affirm.

I

The deceased, Edwards, had for two years been going with one Ola Brown. Some weeks before the stabbing, the relationship began to founder. At about this time, appellant began to keep company with Miss Brown. Shortly thereafter, according to appellant's testimony, he came to Miss Brown's apartment when Edwards was there. At that time, according to appellant, Edwards put one

hand in his pocket, threatened to "blow [appellant's] brains out," and forced appellant to walk backward down the stairs and out of the apartment.

Some weeks later, appellant and Miss Brown were leaving her apartment to go to a nearby market when Edwards, accompanied by his two sons, drove up. Edwards asked Miss Brown if he could drive her to the market, and she refused. Edwards' son testified that this angered Edwards, though "not much" because Edwards by this time had another girl friend.

Appellant and Miss Brown then drove to the market. A few minutes later, Edwards approached appellant in front of the market while Miss Brown shopped inside. Appellant testified that he was just going into the store when Edwards stopped him, thrust his hand into a "bulging" left pocket, seized him with his right hand, and threatened to kill him. Appellant then reached into his pocket, with one motion pulled out and opened his pocket knife, and stabbed Edwards once in the chest. He testified that he had been afraid Edwards would shoot him, and that after the stabbing, still afraid, he retreated into the store with Edwards following.

Edwards then left the store (there was some conflict in testimony as to how serious his condition appeared at the time) and returned to his car. He drove away toward the police station, and told the son to throw away his gun, which apparently had been under the car seat during the incident. After driving a few blocks he collapsed, and was dead on arrival at the hospital.

Two eyewitnesses gave further accounts of the confrontation between appellant and Edwards. Edwards' son testified that Edwards went up to appellant and said, "Do you know Ola May?" Whereupon appellant answered, "Get away from here. We don't need you," and then stabbed Edwards. The son also stated that at one time during the confrontation, Edwards' hand was in his pocket, but not when the stabbing occurred.

Robinson, a news reporter who happened to observe the incident, testified that appellant and Edwards were "having an argument." Appellant had his hand in his pocket, and Edwards had his hands spread wide, gesturing. Edwards said to appellant, "Be a man," and then appellant lunged at him, striking him in the chest. Appellant went into the store, and Edwards, bleeding and bent over, followed. When appellant saw Edwards in the store he said, "If you keep following me, I am going to give you the rest of it."

## II

On appeal, appellant claims that five alleged errors in the conduct of the trial deprived him of his plea of self-defense. He further claims that the evidence was insufficient to support the jury's rejection of the claim of self-defense.

First, appellant argues that it was error to refuse to admit into evidence a written statement made to the police by Edwards' son shortly after the stabbing. Pursuant to the Jencks Act, 18 U.S.C. § 3500 (1964), the prosecution offered this statement to appellant at the close of the direct examination of the witness. The witness admitted making and signing the statement.

Defense counsel twice made use of the statement during cross-examination. In one of those instances, he let the witness read it to refresh his memory before questioning him. In the other instance, the statement was inconsistent with the witness' testimony, and the witness changed his testimony after reading what he had earlier said to the police. Defense counsel asked the witness if Edwards had said anything when he first approached appellant outside the market. The witness testified that he had not. After reading the statement, he testified that Edwards had said, "Do you know Ola May?"

At the close of the trial, defense counsel moved that the witness' Jencks Act statement be admitted into evidence. The motion was denied. The trial judge apparently found, and the Government

now argues, that Jencks Act statements are to be used only for impeachment purposes, and that the impeachment value of the witness' prior statement had been exhausted in cross-examination.

Appellant contends that he is entitled to the fuller attention the jury might have given to the inconsistency between the statement and the witness' initial testimony if the statement had been admitted and the jury allowed to take it into the jury room. He relies largely upon Gordon v. United States, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447 (1953).

In *Gordon* a Court of Appeals had ruled that a witness' prior inconsistent statement would not have been admissible, if offered, because the witness admitted that his earlier statement contradicted his testimony. The Supreme Court rejected this ruling, holding that the jury should be allowed to see the prior statement "because it will best inform them as to the document's impeaching weight and significance." 344 U.S. at 421, 73 S.Ct. at 374.

█ The rule of evidence laid down for the federal courts in *Gordon* applies here. The jury heard the witness testify that his father had not mentioned Ola Brown to appellant at the outset of the fatal confrontation. It then saw the witness read a statement he admitted signing, and finally heard him change that testimony. The best evidence of any contradiction which might impeach his credibility was the prior statement itself. That statement should have been admitted into evidence.

On review of the record, however, we conclude that the failure to admit young Edwards' prior statement into evidence was not so prejudicial as to require reversal. His testimony was not particularly damaging to appellant. Indeed it helped appellant on certain key points by indicating that Edwards had been angry, that he had carried a gun in his car, and that during the confrontation he had one hand in his pocket. Furthermore, what damaging impact the testimony had upon appellant was at heavy discount because the witness was the son of the deceased. Finally, the basic fact of an inconsistency between his initial testimony and a prior statement which he admitted signing became known to the jury through the use of the prior statement as a refresher.

█ Appellant also argues that the trial judge improperly limited defense counsel's questioning of appellant's character witnesses. We find, however, that the judge acted with considerable leniency in allowing deviation from the usual format of reputation testimony. Both of appellant's character witnesses were allowed to state the substance of what they could properly testify to concerning appellant's reputation. We find no error on this point.

█ Appellant challenges the trial judge's instruction to the jury concerning the effect of "false appearances" on a claim of self-defense. The charge, which is set out in the margin,[1] accurately states the law as to the subjective nature of a self-defense claim. At trial defense counsel had requested the somewhat more detailed charge contained in the Junior Bar Manual, also set out in the margin.[2] In a case such as this,

1. "The use of such force as at the time appears reasonably necessary is justified even though it may afterwards be discovered that the appearances were false and there was in fact neither design to do serious bodily injury or danger that it would be done, nor actual need to use so much force in self-defense."

2. "If the defendant had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm and that deadly force was necessary to repel such danger, he would be justified in using deadly force in self-defense, even though it may afterwards have turned out that the appearances were false. If these requirements are met he could use deadly force even though there was in fact neither purpose on the part of the other person to kill him or do him serious bodily harm, nor imminent danger that it would be done,

where self-defense was the central issue of the case, and where applicability of that defense turned upon its mental element, it might have been better practice to give the more detailed charge on the point. But giving the shorter, though substantially correct, charge was not reversible error.

▇▇▇ Appellant also challenges the trial judge's instruction on the relationship between the weapon used and the malice required as an element of culpable homicide.[3] In appellant's view, the reference to "explanatory or mitigating circumstances," without some reference to what such circumstances might be in this case, unduly weighted the scales toward a finding of malice. But by convicting appellant of the lesser included charge of manslaughter the jury apparently found that, because of "explanatory or mitigating circumstances," the killing was committed without malice. Further, appellant's contention that the jury should have been left to decide whether the penknife with which appellant stabbed Edwards was "a deadly weapon" is without merit since it was conceded that the knife was the cause of death. Thus here, too, we can find no prejudicial error.

▇▇▇ Appellant next argues that a rereading of part of the original charge prejudiced him. During its deliberations the jury requested further instruction on "the difference between manslaughter and self-defense." In response, the trial judge reread the portion of his charge which described the elements of second degree murder as well as manslaughter in relation to a claim of self-defense. Appellant argues that this improperly emphasized the possibility of a second degree murder verdict when the jury had indicated that it was wavering between acquittal and a verdict of manslaughter. Again, the judge might well have omitted to recharge on second degree murder in the absence of a request. But in the circumstances of this case repeating part of a correct original charge, although it was surplusage, did not amount to prejudicial error.

▇▇▇ Appellant argues that, even if none of the assigned errors in itself warrants reversal, taken together they constitute a prejudicial denial of his self-defense claim. In our judgment, the record does not support this claim of accumulated prejudice.

▇▇▇ Finally, appellant argues that the evidence was insufficient to support the jury's rejection of his self-defense claim. In his view, the essential testimony establishing self-defense is uncontradicted. However, two eyewitnesses gave accounts indicating that appellant was the aggressor in the confrontation between him and Edwards. The testimony of the disinterested bystander Robinson, a trained news reporter, pointed particularly in this direction. In view of this eyewitness testimony, we cannot say that there must be a reasonable doubt in a reasonable mind as to appellant's guilt.

Affirmed.

nor actual necessity that deadly force be used in self-defense."
BAR ASSOCIATION OF THE DISTRICT OF COLUMBIA, CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA 111 (1966).

3. "If, in a prosecution for homicide, it is shown that the accused used a deadly weapon in the commission of the homicide—and in this case, a knife—the law infers or presumes from the use of such weapon, in the absence of explanatory or mitigating circumstances, the existence of the malice essential to culpable homicide."
N.b., Belton v. United States, 127 U.S. App.D.C. 201, 205, 382 F.2d 150, 154 (1967), holds this is an erroneous charge in that it withdraws from the jury's consideration an essential element of the crime.