UNITED STATES of America, Appellee,

v.

Darlene FRAPPIER, a/k/a Darlene Boissonneault, Darlene Judkins, Defendant, Appellant.

Nos. 85–1831, 86–1409.

United States Court of Appeals, First Circuit.

Dec. 10, 1986.

Owen S. Walker with whom Susan L. Crockin, Federal Defender Office, was on brief, for defendant, appellant.

Paul F. Healy, Jr., Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., was on brief, for appellee.

Before COFFIN, Circuit Judge, BROWN,* Senior Circuit Judge, and BOWNES, Circuit Judge.

COFFIN, Circuit Judge.

This appeal from a conviction of appellant for procuring the premeditated murder of her husband in violation of 18 U.S.C. §§ 1111 and 2, together with an appeal from denial of a motion for new trial, raises some ten issues. The facts are unusually sordid, the trial hard fought by able counsel, and many of the challenged rulings of the district judge close calls. We find no such ruling singly or in conjunction with others to constitute error, abuse of discretion, or prejudice justifying reversal.

The victim was one Army Sergeant Robert A. Boissonneault, found strangled to death on June 6, 1983. While assigned to Fort Devens, he had lived on the base with appellant, her two sons, Warner L. Strout, Jr., and William Hazzard, and her former lover, Michael Pelkey. On June 5, 1983, appellant, hospitalized because of her back, asked, seriatim, both Pelkey and Strout to kill her husband, who would not give her a

* Of the Fifth Circuit, sitting by designation.

divorce. After both refused, appellant checked out of the hospital, came home, and had an argument with her husband about a girlfriend he had in Korea. In the course of an alcoholic evening, according to Strout, appellant offered him $10,000 of the expected proceeds of the insurance policy on her husband's life and help in getting back the daughter Strout mistakenly assumed that appellant had borne him if he would kill his stepfather. This he said he did, with clothesline rope given him by his mother. Strout, who confessed on June 7, 1983, subsequently pleaded guilty to second degree murder, pursuant to a plea bargain, receiving a twenty-five year sentence with eligibility for parole after six years. Appellant was arrested almost two years later, after Pelkey, against whom she had filed a complaint for rape, gave information inculpating her in Boissonneault's murder.

### Defusing Impeachment

Two asserted errors revolve about one basic issue—whether the prosecution, having called a witness, may then "take the wind out of the sails" of the defense by questions eliciting possible bases for impeachment. Appellant, not conceding the propriety of allowing the prosecution to pursue this tactic even where it seeks to take the "sting" out before the defense predictably would attack, claims that in any event such a tactic should not be allowed where there is no basis to suspect that the defense is aiming to impeach. The short response is that Fed.R.Evid. 607 specifically allows this. The Rule provides: "The credibility of a witness may be attacked by any party, including the party calling him." Moreover, "[i]mpeachment under Rule 607 is not limited to occasions where the party calling the witness is surprised or misled by the testimony." *Robinson v. Watts Detective Agency*, 685 F.2d 729, 740 (1st Cir. 1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 728, 74 L.Ed.2d 953 (1983). In addition, we have accepted this proposition in a criminal case even in the face of a defendant's expressed intention, *not* present here, to impeach the credibility of the witness. *United States v. McNeill*, 728 F.2d 5, 14 (1st Cir.1984).

Appellant's arguments directed at the trial court's allowing the government to bring out weaknesses in the past testimony of witnesses Strout, Pelkey, and one Malenfant are aimed solely at the unfairness of allowing the government "to defuse the defendant's case in advance." Apart from the absence of case law supporting appellant's position, we note the difficulty of trying to distinguish between legitimately anticipating some "sting" and illegitimately "defusing in advance." We also suspect that any perceived adversarial advantage is limited; a prosecutor who calculatedly puts a deeply vulnerable witness on the stand is most likely to play no more than a zero sum game.

There does exist the possibility of using a Rule 607 impeachment of one's own witness improperly if there is no relevant contribution to be made by the witness's principal testimony on direct examination. Appellant has called our attention to *Whitehurst v. Wright*, 592 F.2d 834 (5th Cir. 1979), in which the plaintiff had called a witness, whose testimony she knew would be unhelpful, for the purpose of impeaching him with a helpful prior inconsistent statement that was inadmissible for substantive purposes on hearsay grounds. In upholding the district court's refusal to allow the impeachment, the Fifth Circuit observed that " 'impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible,' " *id.* at 839 (quoting *United States v. Morlang*, 531 F.2d 183, 190 (4th Cir.1975)).

Appellant argues that such happened in this case when the prosecution called appellant's daughter to the stand and subsequently, in the guise of defusing impeachment, elicited the allegedly prejudicial fact that defendant had married her daughter's ex-husband. This case differs significantly from *Whitehurst*, however, because the principal testimony of appel-

lant's daughter was not a subterfuge. Appellant had been quoted as saying that she and Boissonneault had never physically fought; the daughter was called to testify that on Boissonneault's and her mother's wedding night there was a fight characterized by blows and foul language. We cannot say that in the course of a hard fought trial it was beyond the pale for the prosecution to attempt to discredit appellant's reported declarations of non-belligerency.

■ Nevertheless, we think it a close question whether the court should have allowed the government to impeach its witness with an arguably prejudicial fact that appellant had explicitly said she would not use in challenging the witness's credibility, thereby eliminating the possibility of any potential "sting" from disclosure of that information on cross-examination. Because appellant may have sought to challenge her daughter's credibility in other ways, however, we cannot say the district court abused its discretion in allowing the government to bring out the marriage issue in an effort to minimize any later attack on credibility. We do not find the marriage fact to be so prejudicial as to mandate exclusion of the evidence.

### Prior Inconsistent "Best Evidence"

A third asserted error, stressed by appellant, was the exclusion of testimony Strout gave to the grand jury. Appellant argues that at trial Strout said (1) he himself had gotten the rope from outdoors and (2) strangled Boissonneault upstairs and then came downstairs to tell his mother, while he told the grand jury that (1) his mother got the rope and (2) she was upstairs in the doorway of the bedroom when he performed the deed. Appellant relies principally on *Gordon v. United States*, 344 U.S. 414, 420–21, 73 S.Ct. 369, 373–74, 97 L.Ed. 447 (1953).

■ There are several points to make in response to this non-frivolous argu-

ment—non-frivolous because a trial court excludes documentary "best evidence" of prior contradiction at some risk. First, however, there is only one inconsistency, for both at trial (Tr. II–90) and before the grand jury Strout said he got the clothes-line from his mother. Second, this is not a case where a witness's prior inconsistencies were only generally and briefly alluded to; the witness was specifically grilled, defense counsel interrogating from the verbatim grand jury testimony, a generally favored form of impeachment. Third, *Gordon* very carefully avoided a per se rule of reversible error for failure to allow "best evidence"; the court's opinion specifically relied on the *combination* of this failure and another exclusion of evidence strongly militating against the witness's credibility. Fourth, we are aware of considerable recent lower court precedent supporting the court's ruling where impeachment has clearly occurred.** Finally, even were this to be considered error, we would have to say that the mere exclusion (after specific admission at trial) of grand jury testimony placing appellant upstairs rather than downstairs could not be prejudicial. *Cf. Williams v. United States*, 403 F.2d 176, 179 (D.C.Cir.1968).

### Premeditation

A fourth issue concerns the court's refusal to instruct that premeditation requires deliberation for an appreciable period of time. The court gave an extensive instruction in which it made the following points: there must be "prior consideration"; there must also be a "period of time adequate for consideration"; the time to form a deliberate plan "varies from person to person" and "according to the circumstances"; it must be enough of an interval "for the accused to be fully conscious and mindful."

■ We see no special magic in the words "appreciable time"; such a phrase

---

** *United States v. Roger,* 465 F.2d 996, 997 (5th Cir.), *cert. denied,* 409 U.S. 1047, 93 S.Ct. 517, 34 L.Ed.2d 498 (1972); *United States v. Thompson,* 708 F.2d 1294, 1303 (8th Cir.1983); *United States v. Hibler,* 463 F.2d 455, 462 (9th Cir.1972); *United States v. Jones,* 578 F.2d 1332, 1340 (10th Cir.), *cert. denied,* 439 U.S. 913, 99 S.Ct. 284, 58 L.Ed.2d 259 (1978).

has no fixed limits; it is just as dependent on person and circumstances as are the words used by the court. So, indeed, do we read *Fisher v. United States*, 328 U.S. 463, 66 S.Ct. 1318, 90 L.Ed. 1382 (1946), where the Court generally approved a trial court instruction that mentioned "appreciable time" but also said that the time varies with each case, that it is the fact of deliberation, of second thought that is important. *Id.* at 469 n. 3, 66 S.Ct. at 1320–21 n. 3. The Court's approval was given in one sentence: "The necessary time element was emphasized and the jury was told that premeditation required a preconceived design to kill, a 'second thought.'" *Id.* at 470, 66 S.Ct. at 1322. Appellee properly calls attention to the remarkably similar formulation approved in *United States v. Brown*, 518 F.2d 821, 825 (7th Cir.), *cert. denied*, 423 U.S. 917, 96 S.Ct. 225, 46 L.Ed.2d 146 (1975). *See also United States v. Shaw*, 701 F.2d 367, 392–93 (5th Cir.1983), *cert. denied*, 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984). Appellant also criticizes the court's instruction for using the words "time adequate for consideration," interpreting them as implying no requirement for deliberation within that adequate time. This, we conclude, is straining too much and ignoring the natural thought that we deem adequately conveyed.

Fault also was found with the court's hypothetical example of a person bearing a gun who, on seeing a bank messenger carrying a canvas bag, decides on the spot to shoot and rob the messenger. Appellant postulates that this would be accident or second degree murder rather than a case of premeditation, but this interpretation ignores the point properly made by the court immediately following its posing of the hypothetical: "I could be found to have premeditation in killing that fellow because I made the decision to do it and took a few moments before I stepped up to him and shot him...." A final criticism misapprehends the court's references to evidence of appellant's having in the past arranged for a hunting accident for her husband, of her asking Pelkey to kill him, and of her asking her son Strout to kill him. The court said that if the jury found that appellant did any one or more of these things, it "may find premeditation." This is not, as appellant argues, "instructing the jury ... as a matter of law." This is perfectly proper advice as to what it could find as a matter of fact. Indeed, at trial, appellant's only final objection was that the court did not say, "You may consider that as an element and that may be part of your deliberations on the question as to whether there is premeditation."

### Limited Cross Examination

A fifth asserted error is the court's refusal to allow counsel to ask the witness Strout, appellant's son who confessed to the killing at appellant's behest, if he knew that the crime for which he made his plea bargain carried a death penalty. Ordinarily we might view foreclosing eliciting this information with great concern, but in the unusual circumstances of this case we do not think the court abused its discretion. Earlier in the trial of the instant case the judge and both counsel had agreed that, because of probable unconstitutionality, there would be no death sentence if a verdict of guilty were returned. There was no information of record as to whether counsel or Strout had known in his own prosecution whether there was a statutory death penalty or, if so, whether its application was likely or unlikely.

There was, in short, no offer of proof in the case at bar on Strout's knowledge of the death penalty, although there had been testimony by Strout that he had known his possible sentence could have been at least life imprisonment. Instead, he received a sentence of twenty-five years with eligibility for parole in six years. This seems to us to have given the jury " 'sufficient other information ..., without the excluded evidence, to make a discriminating appraisal of the possible biases and motivations of the witness.' " *Niziolek v. Ashe*, 694 F.2d 282, 289 (1st Cir.1982) (quoting *United States v. Tracy*, 675 F.2d 433, 437 (1st Cir.1982)).

There was an additional factor in this case, which obviously troubled the court. If cross examination of Strout had injected the idea that murder was punishable by death, the jury could have inferred that it was applicable to appellant. The court would then have been called on to conduct a discussion on sentencing, something that is the exclusive province of the court. Moreover, to surface the issue might well have distorted the jury's deliberations, possibly to appellant's prejudice.

■■■ There are five remaining assignments of error which we mention briefly. One is a grouping of rulings admitting testimony that appellant's behavior at the wake of her deceased husband was emotionless and self centered and that in various ways she exercised an unusual control over her son Strout—because of a prior long separation, followed by an incestual relationship, and cosmetically manifested by a tattoo appellant had put on him. In a case hinging on the believability of a mother's power to command her son to kill his stepfather, we hesitate to hold that admitting such testimony was an abuse of discretion. The admission of autopsy pictures was another alleged error. However, they were not egregiously shocking; most if not all of them bore reference to medical testimony and corroborated Strout's account of the murder.

■■■ Still another issue was the admission of testimony by Strout and Pelkey who, despite disagreements as to secondary details, testified that in 1981 appellant had offered money to another son, Hazzard, to shoot Boissonneault. Having in mind the discretion reposed in the trial court, *United States v. Fosher,* 568 F.2d 207, 213 (1st Cir.1978); *United States v. Eatherton,* 519 F.2d 603, 611 (1st Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975), we cannot find an abuse in admitting this evidence as bearing on animus or motive, modus operandi, and premeditation. An allied claim is that the court erred in saying "You have heard that the defendant previously committed acts similar to those ... here" instead of saying "You heard evidence...." If there is a difference in meaning, we think it discernible only by highly motivated counsel with more than twenty-twenty vision.

■■■ The last alleged error we describe, but do not dignify it with analysis. It is the prosecution's mistaken characterization of, and the trial court's exclusion of evidence of, a twenty-four-year-old crime committed by a prosecution witness. The prosecution had in error reported it as a juvenile matter, whereas the perpetrator was then eighteen and technically an adult. Appellant based her motion for new trial on this ground. We have no doubt that the trial court did not abuse its discretion in denying a new trial and that appellant suffered no prejudice.

*Affirmed.*

