OPINION
Defendant-appellant, Antonio Banks, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of two counts of attempted murder in violation of former R.C. 2923.02 as it relates to R.C. 2903.02, each with a firearm specification pursuant to former R.C.2941.145, and two counts of felonious assault in violation of former R.C. 2903.11, each with a firearm specification pursuant to former R.C.2941.145. Because the judgment of the trial court is supported by sufficient evidence and the manifest weight of the evidence, and because the trial court committed no reversible error, except in sentencing, we affirm defendant's conviction, but remand for resentencing.
By indictment filed April 9, 1999, defendant was charged with two counts of attempted murder and two counts of felonious assault, each with firearm specifications. The matter was heard before a jury beginning November 29, 1999; on December 6, 1999, the jury rendered guilty verdicts on all four counts with the accompanying specifications. The trial court merged the felonious assault convictions with the attempted murder convictions and sentenced defendant to three years on one count of attempted murder, and ten years on the other, with the sentences to run consecutively. The trial court merged the firearm specifications and imposed a mandatory three years to be served consecutively with the attempted murder sentences. Defendant appeals, and assigns the following errors:
 FIRST ASSIGNMENT OF ERROR: THE TRIAL COURT ERRONEOUSLY OVERRULED APPELLANT'S MOTION FOR THE DECLARATION OF A MISTRIAL.
 SECOND ASSIGNMENT OF ERROR: THE TRIAL COURT IMPROPERLY PREVENTED THE DEFENSE FROM EXAMINING A WITNESS CONCERNING HIS IMPROPERLY WITHHELD STATEMENTS IDENTIFYING ANOTHER PERSON AS RESPONSIBLE FOR THE OFFENSES APPELLANT WAS CHARGED WITH.
 THIRD ASSIGNMENT OF ERROR: THE TRIAL COURT ERRONEOUSLY AND INCONSISTENTLY PERMITTED THE STATE TO IMPEACH ITS OWN WITNESS BY MEANS OF A PRIOR INCONSISTENT STATEMENT, WHILE REFUSING TO ALLOW THE DEFENSE TO DO THE SAME TO REDRESS A DISCOVERY VIOLATION.
 FOURTH ASSIGNMENT OF ERROR: APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE EVIDENCE IN THAT (1) THE EVIDENCE WAS INSUFFICIENT, (2) THE COURT ERRONEOUSLY OVERRULED APPELLANT'S MOTIONS FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29, AND (3) CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 FIFTH ASSIGNMENT OF ERROR: AS TO COUNT TWO, THE COURT FAILED TO MAKE FINDINGS SUPPORTING IMPOSITION OF MORE THAN THE MINIMUM PRISON TERM FOR A FIRST OFFENDER.
 SIXTH ASSIGNMENT OF ERROR: THE COURT FAILED TO MAKE FINDINGS IN SUPPORT OF IMPOSITION OF THE MAXIMUM SENTENCE ON COUNT TWO OF THE INDICTMENT.
 SEVENTH ASSIGNMENT OF ERROR: THE COURT FAILED TO PROVIDE FINDINGS AND STATE ITS REASONING SUPPORTING THE IMPOSITION OF CONSECUTIVE SENTENCES.
We first address defendant's fourth assignment of error. In it defendant contends the convictions are not supported by sufficient evidence, the trial court erred in denying defendant's Crim.R. 29 motion, and the convictions are against the manifest weight of the evidence.
To the extent defendant challenges his conviction as not supported by sufficient evidence, we construe the evidence in favor of the prosecution and determine whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 260, paragraph two of the syllabus; State v. Conley (1993), Franklin App. No. 93AP-387.
When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380, 387 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"); Conley, supra. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
According to the state's evidence, on January 10, 1997, Joe Coleman was employed as a "bouncer" at a bar, The Place, on Mount Vernon Avenue in Franklin County. Defendant and a group of people entered the bar, and defendant asked one of the servers, Rhonda Hill, to serve a drink to him and a couple of others. At the same time, defendant told her she was attractive, and they exchanged phone numbers. He then grabbed her, and she responded negatively. Defendant became upset and did not want to pay for the drinks. Hill spoke to the owner, Bryan Bowman, who resolved the issue. Hill traded places with another server, and had no further contact with defendant.
Sometime between 1:00 a.m. and 2:00 a.m., Coleman became involved in a fistfight with a man known as "Tidy Bowl"; defendant and another man associated with defendant, whom Hill had served earlier, were also at the scene of the dispute. Coleman drew a knife, but Bowman and other security staff in the bar broke up the fight and told defendant and his group to leave. Bowman and security personnel took Coleman aside so he could cool off, and defendant and his party walked out the door.
At that point in the sequence of events, the testimony of the state's witnesses diverges to some degree. According to Hill, she went back to the bar, waiting on others, and heard more than one gunshot fired outside the bar. When she looked to see where it came from, defendant was at the entranceway. A customer grabbed Hill and pushed her down, and shooting occurred inside the bar. Hill saw no one but defendant at the door, but she did not see the shooting, nor did she see a gun. When Hill got up, she saw a customer on the floor bleeding. Hill did not see where defendant went after the shooting.
On cross-examination, Hill further explained that, after Bowman escorted defendant and his party outside, one of the other bouncers came back to calm Coleman. Coleman retrieved a gun, and walked to the front door, angry at what had occurred in the bar. As he did so, everyone else walked toward the back of the bar. While Coleman was outside, Hill heard shots fired. When Coleman came back inside, Hill glanced and saw defendant standing at the door, heard gunshots inside the bar, and then a customer took her to the floor.
According to Coleman, he retrieved a gun after the fistfight in the bar, and went outside. He looked around both sides of the building and then reentered the building, but did not fire any shots outside the building. Coleman's testimony about the subsequent events inside the bar corroborates Hill's, except that he saw defendant with a gun. Bowman's testimony was in accord with Coleman's. Moreover, according to Bowman, when Coleman came back inside the bar after following defendant and his group outside, Bowman took the gun from Coleman and put it in the office. Bowman then heard a yell that someone had a gun; Bowman saw defendant standing in the front door area with a gun. Bowman asked defendant what he was doing, but received no response. Bowman went to his office to either get a gun or call 9-1-1, or both, when he heard seven to eight shots fired in the bar. Bowman called 9-1-1.
Similarly, Mark Donaldson heard no shots when Coleman went outside. Donaldson corroborated Bowman's testimony that Bowman took the gun from Coleman and put it in the office. Donaldson saw a man come in, later identified as defendant, and saw he had a gun. Donaldson saw defendant raise the gun, but Donaldson then dove; while he heard the gun shots, he did not see defendant shoot the gun.
Sean Walker, another "bouncer" at the bar, saw Coleman with a gun, but did not hear any shots fired while Coleman possessed the gun. Walker, too, saw defendant with a gun at the entranceway to the bar. Walker reached for it, but a customer advised him he would be shot if he did so. Walker saw defendant shoot randomly into the bar; he saw no one else with a gun. According to Walker, defendant was the only person with a gun in the area from where the shooting came.
R.C. 2903.02 states:
 (A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy.
The "attempt" statute, former R.C. 2923.02 states:
 (A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.
Accordingly, to establish attempted murder pursuant to former R.C. 2923.02
as it relates to R.C. 2903.02, the state must establish that defendant "purposely engaged in conduct which, if successful, would have caused [the victim's] death." State v. Osborne (1999), Franklin App. No. 98AP-741, citing State v. Kidder (1987), 32 Ohio St.3d 279, 283. See, also, State v. Edwards (1985), 26 Ohio App.3d 199. A person acts purposely when it is his or her specific intention to cause a certain result. See R.C.2901.22(A); see, also, Edwards, supra; State v. Koenig (1996), Allen App. No. 1-95-61, appeal not allowed, 77 Ohio St.3d 1475. A jury may infer an intent to kill where (1) the natural and probable consequence of a defendant's act is to produce death, and (2) all of the surrounding circumstances allow the conclusion that a defendant had an intent to kill. Edwards, supra, citing State v. Robinson (1954), 161 Ohio St. 213; see State v. Morgan (1987), Franklin App. No. 86AP-854, cause dismissed (1988), 39 Ohio St.3d 715; Osborne, supra. These circumstances include the means or weapon used, its tendency to destroy life if designed for that purpose, and the manner in which the wounds are inflicted. Robinson, paragraph five of the syllabus; State v. Busby (1999), Franklin App. No. 98AP-1050. The specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death. State v. Mackey (1999), Cuyahoga App. No. 75300, dismissed, appeal not allowed (2000), 88 Ohio St.3d 1496, citing State v. Widner (1982), 69 Ohio St.2d 267 (finding purpose to kill in passenger's firing gun at individual from moving vehicle); State v. Dunlap (1995), 73 Ohio St.3d 308, 316, certiorari denied (1996),516 U.S. 1096, 116 S.Ct. 1096.
To the extent defendant contends the evidence fails to reflect defendant as the shooter, defendant's argument is unpersuasive. While Hill testified she did not see a gun in defendant's hand, other witnesses testified they saw defendant with the gun, saw defendant raise the gun, and saw defendant shoot the gun. Construing the evidence in favor of the state, the jury could reasonably find defendant was indeed the shooter.
Defendant also contends that even if the jury accepted such evidence, the state failed to present enough evidence that defendant acted purposely. Instead, defendant contends the state showed only that defendant acted recklessly. See R.C. 2901.22(C) (defining reckless as "heedless indifference to the consequences"). According to the state's evidence, defendant fired the gun randomly into the bar, injuring one patron and paralyzing another. "[T]he act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." State v. Turner (1997), Franklin App. No. 97APA05-709, dismissed, appeal not allowed (1998), 81 Ohio St.3d 1496
(finding sufficient evidence of intent to kill in firing a gun from an automobile at a group of individuals), quoting State v. Brown (1996), Cuyahoga App. No. 68761, dismissed, appeal not allowed, 77 Ohio St.3d 1468; see, also, State v. Smith (1993), 89 Ohio App.3d 497, 501 (finding that pointing gun at a group of people less than twenty feet away and shooting at least one shot could be used by the trier of fact as proof of intention to kill). The evidence was sufficient to allow the jury to conclude that defendant acted with purpose or intent to kill. Accordingly, the convictions are supported by sufficient evidence.
Defendant also contends the trial court erred in overruling his Crim.R. 29 motion for acquittal. "[A]n entry of a judgment of acquittal was improper where the evidence was such that reasonable minds could reach different conclusions as to whether each material element of a crime had been proven beyond a reasonable doubt. * * * [A] trial court, when ruling on a motion brought pursuant to Crim.R. 29(A), must view the probative evidence in a light most favorable to the state and determine whether the state presented sufficient evidence on each of the essential elements of the offense charged. State v. Perkins (1994),93 Ohio App.3d 672, 680 * * * citing State v. Martin (1983),20 Ohio App.3d 172." State v. Saikus (1998), Cuyahoga App. No. 71981, dismissed, appeal not allowed, 82 Ohio St.3d 1441. Thus, the standard for a Crim.R. 29 motion is virtually identical to that employed in testing the sufficiency of the evidence. For the same reasons the evidence is sufficient to support defendant's conviction, it is sufficient to overcome defendant's Crim.R. 29 motion for acquittal.
Lastly, defendant contends his convictions are against the manifest weight of the evidence. Defendant presented one witness, who did not significantly challenge the evidence the state presented. Rather, defendant's most significant inroads in the state's case were accomplished through cross-examination. However, at best, defendant was able to show some discrepancies among the testimony offered by the state's witnesses regarding (1) Coleman's firing shots outside the bar before returning and being relieved of the firearm, and (2) defendant's possession of a firearm as he stood in the entranceway to the bar. Because, however, the state presented witnesses who saw defendant with the gun, saw defendant raise the gun, and saw defendant shoot the gun, any discrepancies in the testimony are for the jury to resolve. DeHass, paragraph one of the syllabus. The record does not support defendant's contention that the jury lost its way in resolving the credibility issues presented through the state's testimony and the cross-examination of those witnesses. Defendant's fourth assignment of error is overruled.
Defendant's first assignment of error contends the trial court erred in overruling defendant's motion for a mistrial. Partway into the trial, defendant requested Crim.R. 16(B)(1)(g) information. Pursuant to that request, defendant was given a tape of the statements of various witnesses, as well a summary prepared by the Columbus Police Department. After reviewing the tape and summary, defendant announced the state had withheld exculpatory evidence, and he moved the trial court for either (1) a mistrial, or (2) a continuance to secure either the presence of Jesse Griggs, an eyewitness, or the testimony of the appropriate police officers needed to introduce the tape in defendant's case-in-chief. Defendant's request was premised on Griggs' statement in the tape recording that either "Tidy Bowl" or "Tugboat" was the shooter in the incident at The Place.
In response, the trial court withheld ruling on the motion, decided to continue with the trial, determined it would listen to the tape recording, and instructed the prosecution to obtain the presence of the detective who took the statement.
Ultimately, Griggs was brought before the trial court. Outside the presence of the jury, and by agreement of the parties, the trial court inquired of Griggs about his statement indicating someone other than defendant had been the shooter on January 10, 1997. During the inquiry, Griggs admitted he had not seen the shooter, but simply speculated that the person he named in his statement was the person who fired the gun in the bar.
Because Griggs recanted, the trial court asked defendant to explain the prejudice he had sustained as a result of the state's failure to promptly turn over the taped statements to defense counsel. Defense counsel explained that if he had had the tape, he could have contacted Griggs two years earlier, at which time Griggs may have said something different. In response, the court indicated defendant had been indicted in April 1999, so the state had no duty two years earlier to turn over the statement to defense counsel. Ultimately, because defendant was unable to show material prejudice as a result of the state's failure to promptly turn over the taped statement, the trial court denied the motion for mistrial.
On appeal, defendant contends the state's failure to turn over the favorable evidence to defendant violates Brady v. Maryland (1963),373 U.S. 83, 83 S.Ct. 1194, and further violated the state's duty to produce discoverable information to defense counsel. "Suppression by the prosecution of evidence that is favorable to the accused and `material either to guilt or to punishment' is a violation of due process." State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128 at ¶ 27, quoting Brady at 87. "Evidence suppressed by the prosecution is `material' within the meaning of Brady only if there exists a reasonable probability that the result of the trial would have been different had the evidence been disclosed to the defense." Id. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Id., quoting Kyles v. Whitley (1995), 514 U.S. 419, 434, 115 S.Ct. 1555.
Despite defendant's claims, the state did not violate Brady by withholding the exculpatory recorded statements. The statements were presented to defendant "during the trial (and not after the trial as in Brady), and no Brady violation exists." State v. Hanna, 95 Ohio St.3d 285,2002-Ohio-2221 at ¶ 82; see, also, State v. Iacona (2001),93 Ohio St.3d 83, 100. In Iacona, however, the court recognized federal cases have held disclosure may be so late during the trial as to violate due process: "It has, however, been held that the philosophical underpinnings of Brady support the conclusion that even disclosure of potentially exculpatory evidence during trial may constitute a due process violation if the late timing of the disclosure significantly impairs the fairness of the trial. Even where information may be exculpatory, '[n]o due process violation occurs as long as Brady material is disclosed to a defendant in time for its effective use at trial.'" Id., quoting United States v. Smith Grading Paving, Inc. (C.A.4, 1985), 760 F.2d 527, 532. Here, even if defendant had learned of the tape earlier, he nonetheless would have been left with a witness who recanted and ultimately provided no information useful to defendant. As a result, the timing of the disclosure fails to support a due process violation.
Moreover, to the extent defendant contends the trial court erred in the manner it handled the prosecution's failure to timely produce the tape recording pursuant to defendant's request for discovery, the trial court did not abuse its discretion. "Violations of Crim.R. 16 by the prosecution may result in reversible error only upon a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information could have benefited the accused in preparing a defense, (3) the accused has suffered prejudice." LaMar at ¶ 38, citing State v. Joseph (1995), 73 Ohio St.3d 450,458, certiorari denied (1996), 516 U.S. 1178, 116 S.Ct. 1277. Here, defendant cannot establish prejudice because there was no reasonable probability of a different trial result even if the prosecution had disclosed Griggs' statement to defendant.
More particularly, once the trial court learned the state had failed to turn over the taped statements, the trial court conferred with counsel. The prosecution contended it did not know the tapes contained exculpatory information, but the trial court nonetheless determined the state had wrongly failed to produce the statements to defendant. The trial court attempted to meet defendant's concerns by bringing in the detective who took the statement, as well as the witness who made it. Once the witness's presence was obtained, the court gave defendant an opportunity to inquire and, ultimately, the witness failed to provide the testimony defendant desired. As a result, the record fails to disclose that the trial court acted arbitrarily in view of the prosecution's failure to properly respond to defendant's discovery request. Rather, it acted to remedy the problem; the evidence simply did not materialize as defendant had hoped.
Nor does the record suggest an abuse of discretion in failing to sanction the state by admitting the taped recording as evidence. Even if the trial court's statement may be deemed to meet the first prong of LaMar, the second prong was not demonstrated to the trial court and the third prong was not met, given the witness's recanting his prior statement. Accordingly, defendant's first assignment of error is overruled.
Defendant's second assignment of error contends the trial court erred in refusing to allow defendant to examine Griggs with his improperly withheld statement.
After the trial court had interviewed Griggs in the presence of counsel, Griggs left the courtroom, and in the presence of counsel but the absence of the jury, the court explained its position in the matter: "I came to the conclusion this tape recording and/or the summary should have been turned over to the Defense prior to trial because certainly in the summary very clearly this witness that night was telling the police that the shooter was Tidy Bowl and/or the Defendant, depending on how you look at the summary, it's not very clear. * * * Had it been turned over ahead of time, I can only come to the conclusion now that you have found this man, he would have been telling us the same thing that he's telling us now, which is he didn't see anything, he made some assumptions that night about who was doing the shooting, but he didn't see anything." (Tr. 283-284.) The trial court further explained the statement could not be deemed an excited utterance, as Griggs stated he was drunk and not excited from the shooting. The trial court concluded by saying "I don't think — I can't think of any other way you're going to be able to get his prior statement into evidence. Now if you can think of some way, you tell me about it." (Tr. 284.)
Defense counsel suggested it might be either a prior inconsistent statement or present sense impression. The prosecution, however, noted the statement was not given at the time of the shooting, but an hour later, and thus would not constitute a present sense impression. The court then stated, "[t]he best case scenario would have been to put him on call, not know what he was going to say. Then if he said what he said in here you could impeach him with it. But it still wouldn't be substantive evidence. You could not argue, nor could it be offered to prove the truth of the matter that he stated in the statement at the time he made the statement because his current statement is: I didn't see anything and I don't know anything." (Tr. 284-285.)
Defense counsel then called Griggs as a witness, and during the course of his testimony attempted to introduce the statement. The trial court refused to allow it. On appeal, defendant contends the trial court should have allowed the statement into evidence as defendant was surprised and affirmatively damaged because disclosure of the prior statement came during trial, leaving defense counsel with a reasonable expectation at the time of disclosure that the witness would provide testimony beneficial to the defense. (Appellant's brief, 14.)
Evid.R. 607(A) provides in part:
 The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage.
Whether defendant was taken by surprise by Griggs' change in testimony, so as to authorize defendant to declare the witness hostile and to allow defendant to impeach Griggs, is a decision within the broad, sound discretion of the trial court. State v. Asher (1996), 112 Ohio App.3d 646,653, appeal not allowed, 77 Ohio St.3d 1492, quoting State v. Diehl (1981), 67 Ohio St.2d 389, 391. "Surprise can be shown when a witness's testimony is materially inconsistent with a prior written or oral statement and when counsel did not have reason to believe that the witness would recant when called to testify." Id. at 652-653, citing State v. Holmes (1987), 30 Ohio St.3d 20, and State v. Cantlebarry (1990), 69 Ohio App.3d 216. As Asher explained, "[t]he reason for this rule is to ensure that a party does not call a witness for the sole purpose of impeaching her with statements which would otherwise be inadmissible." Id. at 653.
Here, defense counsel, without question, knew Griggs had recanted at the time Griggs was called to testify, and defense counsel thus could not have been surprised by his testimony. Accordingly, the trial court did not abuse its discretion in determining that the statement was inadmissible hearsay under Evid.R. 607. Indeed, had the trial court ruled to the contrary, it would have violated the purpose of Evid.R. 607, as indicated by Asher. Defendant's second assignment of error is overruled.
Defendant's third assignment of error contends the trial court erred in permitting the state to impeach its own witness with a prior inconsistent statement, especially in view of the trial court's refusal to allow defendant to use Griggs' prior statement.
More particularly, on direct examination, Bowman testified he saw defendant in the front door area with a gun; he saw no one else with a gun. He asked what defendant was doing, and not receiving a response, he went toward his office to get his firearm, to call 9-1-1, or both. The prosecution then inquired of Bowman whether he had given the police a statement when he spoke to them on January 10, 1997. On receiving Bowman's affirmative reply, the prosecution inquired whether it contained the same information he testified to in the courtroom. The trial court overruled defendant's objection, and the witness responded that it did not. The prosecution continued by asking Bowman what he told the police on January 10, 1997. Bowman testified that he had told them he did not know who did the shooting. In response to the prosecution's next question, Bowman admitted his response to the police was not true. According to Bowman, he denied knowledge to the police because he felt bad about everything that had happened in the club, but did not believe there was a reason for him to get involved in it.
Contrary to defendant's contentions, the factual circumstances surrounding Bowman's testimony are unlike those surrounding Griggs' testimony. Defendant called Griggs as a witness, knowing the testimony Griggs offered would be unfavorable to defendant's case. Defendant hoped to use Griggs' statement not to explain or diminish the impact of Griggs' prior inconsistent statement, but for the truth of what he said in the prior statement. By contrast, the state offered Bowman's testimony for the truth of the matter asserted, and used the prior inconsistent statement as a strategic decision to diminish the damage to Bowman's credibility arising from his having told the police something different than his testimony at trial. The state did not seek to circumvent the hearsay rule, as it did not offer the inconsistent statements for their truth. See State v. Tyler (1990), 50 Ohio St.3d 24, 34-35, certiorari denied,498 U.S. 951, 111 S.Ct. 371.
As the Supreme Court explained in Tyler, Evid.R. 607 was designed to prevent circumvention of the hearsay rule. Unlike defendant's seeking to introduce Griggs' prior inconsistent statement for its truth despite its hearsay nature, the state did not want Bowman's prior statement offered for its truth, as the prior statement was detrimental to the state's case. "It is clearly permissible for a party to `draw the sting' of cross-examination by bringing out, on direct examination, facts that tend to discredit that party's own witness. United States v. Frappier (C.A.1, 1986), 807 F.2d 257, 259. This is not done to impeach the witness, but to present an image of candor to the trier of fact. Evid.R. 607 was never intended to limit this practice." Id. at 34. Accordingly, defendant's third assignment of error is overruled.
Defendant's fifth, sixth, and seventh assignments of error all challenge various aspects of the trial court's sentence. Defendant's fifth assignment of error states the trial court failed to make the requisite findings in support of other than a minimum prison term for a first offender.
Pursuant to former R.C. 2929.14(B) and State v. Edmonson (1999),86 Ohio St.3d 324, in order to impose more than the minimum sentence for someone who has never served a prison term, the trial court must find either that the minimum sentence will demean the seriousness of the offense, or that it will not adequately protect the public from future crimes by the offender or others. While other sections of the sentencing statutes do not require the trial court to state the reasons for its findings, the findings are a prerequisite to imposing more than the minimum sentence. Without question, the trial court failed to make the requisite findings in imposing other than the a minimum prison term for defendant, who had not previously served a prison term.
Defendant's sixth assignment of error asserts the trial court failed to make the requisite findings in support of imposing the maximum sentence on the second count of the indictment. Pursuant to former R.C. 2929.14(C), "the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section." Moreover, pursuant to former R.C. 2929.19(B)(2)(d), the trial court must state its reasons for the finding in support of a maximum term.
Although the trial court ordered defendant to serve a maximum term of ten years for one of the attempted murder counts, the trial court failed to make the requisite findings or to state its reasons for those findings.
Lastly, defendant's seventh assignment of error contends the trial court failed to provide the requisite findings and reasons for imposing consecutive sentences on defendant. Former R.C. 2929.14(E)(4) and2929.19(B)(2)(c) authorized the trial court to impose consecutive sentences under selected circumstances. Former R.C. 2929.14(E)(3), in effect at the time of defendant's crimes, stated:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
R.C. 2929.19(B)(2) provides:
 The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
* * *
 (c) If it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences[.]
Accordingly, not only must the trial court specify its findings from among those set forth in former R.C. 2929.14(E)(3), but it must also specify one of the findings set forth in former R.C. 2929.14(E)(3)(a), (b), or (c). Further, the court must specify its reasons in support of those findings pursuant to former R.C. 2929.19(B)(2)(c).
Again, the trial court failed to comply with the statutory requisites for both findings and reasons in support of those findings. Accordingly, defendant's fifth, sixth, and seventh assignments of error are sustained.
Having overruled defendant's first, second, third, and fourth assignments of error, but having sustained his fifth, sixth, and seventh assignments of error, we affirm the judgment of the trial court insofar as it finds defendant guilty of the charged offenses, but we reverse the sentence the trial court imposed and remand only for resentencing.
Judgment affirmed in part and reversed in part; case remanded for resentencing.
TYACK, P.J., and DESHLER, J., concur.