**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-4218**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

KELVIN ROSS SINCLAIR,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Florence.  R. Bryan  Harwell, District Judge. (4:06-cr-01321-RBH-1)

Submitted:  October 24, 2008      Decided:  November 24, 2008

Before NIEMEYER, MOTZ, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Michael A. Meetze, Assistant Federal Public Defender, Florence, South Carolina, for Appellant.  W. Walter Wilkins, United States Attorney, Alfred W. Bethea, Jr., Carrie A. Fisher, Assistant United States Attorneys, Florence, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kelvin Ross Sinclair was convicted by a jury of unlawful possession of a firearm and ammunition by a convicted felon, 18 U.S.C.A. §§ 922(g)(1), 924(e) (West 2006 & Supp. 2008), and was sentenced to a term of life imprisonment. Sinclair appeals his conviction and sentence, contending that the district court abused its discretion in permitting the government to introduce certain hearsay testimony, erred in applying a cross reference to U.S. Sentencing Guidelines Manual § 2A1.1 (2006) (First Degree Murder), and erred in overruling his constitutional challenge to the armed career criminal sentence. We affirm.

On October 8, 2006, Phillippe Williamson was shot and killed at Club Maximus, a nightclub in Myrtle Beach, South Carolina. Although the gun used to kill him was never recovered, Sinclair was prosecuted on a federal charge of unlawful possession of a firearm (the murder weapon) and ammunition by a felon. The government's evidence at trial established that Williamson and Sinclair got into a fight inside the club and that Sinclair was removed from the club. He returned a short while later with a gun and shot Williamson. Two principal witnesses were Darrell Holmes, a friend of Williamson, who witnessed the fight and the shooting, and Dante Tolbert, a friend of Sinclair, who saw him reenter the club

2

after he was ejected.  Tuesday Smith, Williamson's girlfriend, also testified that she came to the club after her nephew, Xavier Smith, told her he had learned in a telephone call that Williamson and Sinclair had been fighting at the club and that Williamson was "near dead on the floor."  When Smith arrived at the club, she spoke to Holmes in the parking lot.  He told her that "Kevin" shot Williamson.  Holmes did not know Sinclair's last name, and identified Sinclair as "Misty's baby daddy."  Misty Brown was a mutual acquaintance and the mother of Sinclair's two children.

Sinclair unsuccessfully sought to exclude Holmes' testimony about Smith's statements to him and Smith's testimony about Xavier Smith's statements to her.  A trial court's ruling on the admissibility of evidence is reviewed for abuse of discretion.  United States v. Midgett, 488 F.3d 288, 297 (4th Cir.), cert. denied, 128 S. Ct. 464 (2007).  Hearsay is defined in Fed. R. Evid. 801(c) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  A "statement" is defined in Rule 801(a)(1) as "an oral or written assertion."  "Assertion" is not defined, but the advisory committee notes to Rule 801(a) clarify that "nothing is an assertion unless intended to be one."

The "statements" by Tuesday Smith that Sinclair sought to exclude consisted of three questions she asked Holmes. He testified:

> So Tuesday pulled me off to the side, she was like, what happened, Derrell, what happened, tell me what happen. I was like Tuesday, he shot him. She said, who shot him. I said Kevin, Kevin shot him. At that time, I didn't even know his last name. I mean, I know him, I didn't know his last name. I know who he was.
>
> She was like, who? Misty's baby daddy. I say he shot him, he shot him.

A question or inquiry is not a statement, and therefore is not hearsay unless it can be construed as an intended assertion. United States v. Thomas, 453 F.3d 838, 845 (7th Cir. 2006); United States v. Jackson, 88 F.3d 845, 848 (10th Cir. 1996); United States v. Oguns, 921 F.2d 442, 449 (2d Cir. 1990); United States v. Lewis, 902 F.2d 1176, 1179 (5th Cir. 1990). In this case, Smith's questions were requests for information and cannot be construed as assertions. Because the questions were not hearsay, the district court did not abuse its discretion in admitting them. Holmes' statements to Smith were not hearsay because, pursuant to Rule 801(d)(1)(C), a "statement is not hearsay if . . . the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . one of identification of a person made after perceiving the person."

4

Sinclair also sought to exclude the following testimony by Tuesday Smith:

> [Xavier] said he just got a call that Phil and Kevin was fighting. And I said what Kevin. And he said Misty's Kevin. Then he turned and came back and said Phil was damn near dead on the floor.

The government offered this testimony, not for the truth of the matter asserted, but to show "why [Smith] did what she did next," that is, why she left home and went to Club Maximus at about 2:00 o'clock in the morning. Although the statements are hearsay, we are satisfied that the district court did not abuse its discretion in admitting them under Fed. R. Evid. 803(3) to explain Smith's "then existing state of mind." In any case, any error was harmless because the statements tended to prove only that Sinclair and Williamson fought at the club and that Williamson was likely dead, but did not suggest that Sinclair possessed a gun, the offense for which he was on trial.

At the sentencing hearing, Sinclair objected to the cross reference to USSG § 2A1.1, the guideline for first degree murder, arguing that the killing was done without premeditation or malice, in the heat of a sudden quarrel. He maintained that a more appropriate cross reference would be to the guideline for voluntary manslaughter, or "something other than premeditated

5

murder." The district court disagreed, finding that § 2A1.1 applied. The court made the following findings:

> This was a malicious and premeditated killing. After the confrontation between the defendant and the deceased, the defendant was escorted out of the club. Instead of leaving, he goes and retrieves a firearm. He made a conscious, deliberate decision to come back with a weapon with the intention of shooting Phillippe Williamson.
>
> According to Derrell Holmes' testimony, the defendant came back in with a hoody over his head, and a hand under his shirt. Holmes said the defendant came up and said, quote, hey, where your boy at? And said, also, quote, I should pop your bitch ass, too. Holmes tried to get the defendant to leave, but instead, the defendant proceeded to basically rob Holmes, when Phillippe Williamson came up, and the defendant shot him.
>
> Later, Donte [sic] Tolbert asked the defendant if Williamson was dead, and the defendant said, I hope so.
>
> This was not voluntary manslaughter. He had time to reflect on what he was doing. He knew what he was doing. He came in there with a hoody over his head, a hand under his shirt and in fact, told Holmes basically that he should shoot him, too, before he shot the deceased. His conduct was malicious, reckless, wanton, he retrieved a gun and fired it at Mr. Williamson. He made a conscious decision to do so. The fact that after being escorted out, he returned with a loaded gun, coupled with the statements he made to Mr. Holmes and Mr. Tolbert support the fact that his conduct was malicious and premeditated, so I overrule your objection.

The court also agreed with the government that Sinclair committed the murder during the perpetration of a robbery, which established an alternative ground for a cross reference to § 2A1.1. USSG § 2A1.1, comment. (n.1(B)).

6

Sinclair contends that the evidence showed that Williamson's death was a voluntary manslaughter rather than a premeditated murder. We review a sentence under an abuse of discretion standard. Gall v. United States, 128 S. Ct. 586, 590 (2007). The first step in this review requires the appellate court to ensure that the district court committed no significant procedural error, such as improperly calculating the guideline range. United States v. Osborne, 514 F.3d 377, 387 (4th Cir.), cert. denied, 128 S. Ct. 2525 (2008).

Under § 2K2.1(c)(1)(B), if the defendant unlawfully used or possessed a firearm in connection with another offense, and death resulted, the most analogous homicide guideline should be applied. Guideline section § 2A1.1 applies in cases where a killing is premeditated, while USSG § 2A1.3 applies in the case of voluntary manslaughter.

To establish first degree murder, the government must show malice aforethought as well as premeditation and deliberation. United States v. Shaw, 701 F.2d 367, 392 (5th Cir. 1983). Malice aforethought "may be established by evidence of conduct which is reckless and wanton and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily injury." United States

7

v. Williams, 342 F.3d 350, 356-57 (4th Cir. 2003) (internal quotation and citation omitted).

This court has held that no particular period of time for reflection is essential to a finding of premeditation and deliberation. Faust v. North Carolina, 307 F.2d 869, 871 (4th Cir. 1962); see also United States v. Downs, 56 F.3d 973, 975 (8th Cir. 1995); Shaw, 701 F.2d at 392-93. What is required is a showing that the defendant acted with a "cool mind [and] did, in fact, reflect, at least for a short period time before his act." Id. at 393. While the amount of time for reflection may vary, "it is the fact of deliberation, of second thought that is important." United States v. Frappier, 807 F.2d 257, 261 (1st Cir. 1986) (citing Fisher v. United States, 328 U.S. 463 (1946)). Voluntary manslaughter is defined in 18 U.S.C.A. § 1112 (West 2000 & Supp. 2008) as "an unlawful killing of a human being without malice . . . [u]pon a sudden quarrel or heat of passion."

Sinclair maintains that Williamson was shot during a sudden, heated confrontation, which he characterizes as "an ongoing dispute" in which Williamson attacked him and he "retaliated within minutes, while the dispute was ongoing." However, the evidence established that Sinclair had at least several minutes to reflect after he was ejected from the club. During that time, he obtained a gun, put on a hoody and pulled

8

the hood up, thus changing his appearance to some degree, and went back into the club through a side exit door. He thus avoided the club's weapon check at the front door. Sinclair's encounter with Holmes after he reentered the club indicated that he was looking for Williamson, and he shot Williamson when he found him. This evidence showed that Sinclair had time to reflect between his fight with Williamson and the shooting. We conclude that the district court did not err in finding that there was evidence of premeditation, and correctly applied the cross reference to § 2A1.1.

Last, Sinclair challenges his armed career criminal sentence, arguing that the government's failure to charge his predicate convictions in the indictment violates the Fifth and Sixth Amendments under Apprendi v. New Jersey, 530 U.S. 466 (2000). He contends that Apprendi cannot be reconciled with the Supreme Court's holding in Almendarez-Torres v. United States, 523 U.S. 224 (1998) (holding that prior conviction used to enhance sentence need not be charged in the indictment). We have rejected similar Fifth and Sixth Amendment challenges to the continued viability of Almendarez-Torres, see United States v. Thompson, 421 F.3d 278, 281 n.2 (4th Cir. 2005); United States v. Cheek, 415 F.3d 349, 352-54 (4th Cir. 2005), and may not overrule this court's precedents. United States v. Simms, 441 F.3d 313, 318 (4th Cir.) ("A decision of a panel of this

court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court." (internal quotation omitted)), cert. denied, 127 S. Ct. 233 (2006). Therefore, this claim fails.

Accordingly, we affirm the conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED